**Mark MARES, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 04–00–00725–CR.**

Court of Appeals of Texas, San Antonio.

July 5, 2001.

---

Nancy B. Barohn, Dallas, for Appellant.

Edward F. Shaughnessy, III, Asst. Crim. Dist. Atty., San Antonio, for Appellee.

Sitting PHIL HARDBERGER, Chief Justice, CATHERINE STONE, and PAUL W. GREEN, Justices.

## OPINION

HARDBERGER, Chief Justice.

Mark Mares ("Mares") was convicted by a jury of sexual assault and was sentenced by the jury to ten years imprisonment. Mares raises three issues in his brief, asserting that the prosecutor engaged in deliberate misconduct by eliciting evidence of an extraneous offense during the guilt/innocence phase of the trial and that he received ineffective assistance of counsel. We overrule all of Mares's issues except his contention that he received ineffective assistance of counsel during the punishment phase of his trial based on his trial counsel's failure to object to the State's questioning of a probation officer as an expert. We reverse the trial court's judgment and remand the cause to the trial court for a new punishment hearing.

## BACKGROUND

Mares was charged with sexual assault. The complainant testified that she met Mares at her boyfriend's apartment as she and her boyfriend were finishing lunch around 3:00. Her boyfriend left for work shortly after Mares arrived. The complainant testified that she and Mares engaged in a brief conversation. Mares testified that the complainant and he engaged in a prolonged flirtatious conversation and that the complainant asked for him to stay at the apartment until she returned from work. Mares testified that the phone rang while he was waiting, but the caller did not leave a message. Mares, thinking it could be his wife, pressed star 69 to dial the caller back. Mares stated that the caller was the complainant, who encouraged him to wait for her.

The complainant testified that she returned to the apartment about 4:30 to lock it because she believed Mares would be gone. The complainant had the only key to the apartment, and the door was not self-locking. When she arrived, she sat across from Mares, and he asked her where her cousin was. When the complainant stated that she did not know where her cousin was, the complainant testified that Mares became angry. The complainant became uncomfortable and started to leave. Mares blocked her path and sexually assaulted her.

Mares testified that when the complainant returned to the apartment, they engaged in consensual sex. Mares further testified that the complainant gave him her business card. The card was introduced into evidence. The complainant testified that she had cards laying around the apartment, and Mares must have picked one up.

The complainant's sister testified that the complainant called her later that night and told her that she had been sexually assaulted. The complainant's sister encouraged her to tell their mother and father. The complainant's sister testified that the complainant was upset and did not want to tell her parents. The complainant told her sister that Mares told her that he would hurt her boyfriend if she said anything.

The complainant's boyfriend returned home around midnight. The complainant testified that she awoke the next morning and went to work. When the complainant returned home at lunch, she told her boyfriend that Mares had sexually assaulted her. The complainant's boyfriend phoned the police. The police arrived and took the complainant's statement and accompanied her to the hospital for an examination.

The nurse who examined the complainant noted an erythema, or redness, and an abrasion in the complainant's vaginal area. The nurse who testified indicated that redness and abrasion were consistent with forcible penetration. On cross-examination, the nurse stated that the complainant's injury could have been obtained from consensual sex, but it was not equally consistent with consensual sex as with forcible penetration.

DNA samples were taken from both Mares and the complainant's boyfriend. Neither Mares nor the complainant's boyfriend could be excluded as a potential contributor of the genetic material collected during the complainant's examination and from her clothes.

The jury found Mares guilty of sexual assault and sentenced him to ten years imprisonment.

## EXTRANEOUS OFFENSE

In his first point of error, Mares complains that the trial court erred in eliciting testimony regarding a statement Mares made to the complainant concerning her

cousin. The State counters that the error was not preserved, that there was no evidence before the jury that the statement was made, or, alternatively, that the inquiry was proper. The statement related to Mares questioning the complainant regarding whether her cousin intended to tell on him in reference to certain drug offenses.

■ The admission of evidence is reviewed under an abuse of discretion standard. *Montgomery v. State*, 810 S.W.2d 372, 379–80 (Tex.Crim.App.1990). As long as the trial court's ruling was within the "zone of reasonable disagreement," there is no abuse of discretion, and we must uphold the trial court's ruling. *Id.* at 381. Under the opened-door doctrine, a defendant cannot intentionally broach a subject and then complain when the subject is subsequently pursued by the State. *Heidelberg v. State*, 36 S.W.3d 668, 672 (Tex. App.—Houston [14th Dist.] 2001, no pet.); *Jaubert v. State*, 2000 WL 287950, at *19 (Tex.App.—Waco Mar.15, 2000, pet. filed); *Sherman v. State*, 20 S.W.3d 96, 101 (Tex. App.—Texarkana 2000, no pet.).

■ During defense counsel's cross-examination of the complainant, the following questioning occurred:

Q. Okay. And what was talked about at that time?

A. He was asking me about my cousin Rick, if I knew where he was. Because he wanted to know if he was going to tell on him.

This questioning opened the door to the subject of the conversation between Mares and the complainant about her cousin. The questioning pursued by the State was limited to the same subject. Therefore, the trial court did not abuse its discretion in allowing the questioning, and Mares's first issue is overruled.

## INEFFECTIVE ASSISTANCE OF COUNSEL

■ In his second and third issues, Mares claims he is entitled to a new trial or, alternatively, a new punishment hearing, because his trial counsel rendered ineffective assistance. In order to prevail on these issues, Mares has the burden to prove by a preponderance of the evidence that: (1) counsel's performance was deficient, i.e., his assistance fell below an objective standard of reasonableness; and (2) appellant was prejudiced, i.e., a reasonable probability exists that but for counsel's unprofessional errors, the result of the proceeding would have been different. *Thompson v. State*, 9 S.W.3d 808, 812 (Tex.Crim.App.1999). A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*

An appellate court looks to the totality of the representation and the particular circumstances of each case in evaluating the effectiveness of counsel. *Id.* at 813. There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Id.* To defeat the presumption of reasonable professional assistance, any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Id.*

■ Mares must overcome the presumption that the challenged act or omission might be considered sound trial strategy. *Chambers v. State*, 903 S.W.2d 21, 33 (Tex.Crim.App.1995). We do not view trial counsel's performance with hindsight. *Delrio v. State*, 840 S.W.2d 443, 445 (Tex. Crim.App.1992). The fact that another attorney might have pursued a different course of action or tried the case differently will not support a finding of ineffective assistance of counsel. *Owens v. State*, 916

S.W.2d 713, 717 (Tex.App.—Waco 1996, no pet.).

### 1. *Failure to Obtain Rulings on Pretrial Motions*

Mares initially contends that trial counsel was ineffective in failing to obtain rulings on the pretrial motions he filed. The State responds that the record does not demonstrate that Mares was harmed by the absence of ruling on the motions. The failure to file pre-trial motions is not categorically deemed ineffective assistance of counsel because trial counsel may decide not to file pre-trial motions as part of his trial strategy. *See Hammond v. State*, 942 S.W.2d 703, 710 (Tex.App.—Houston [14th Dist.] 1997, no pet.); *Wills v. State*, 867 S.W.2d 852, 857 (Tex.App.—Houston [14th Dist.] 1993, pet. ref'd). In this case, trial counsel filed numerous pre-trial motions but elected to pursue only a few at the hearing on pre-trial motions. The decision not to pursue the remaining motions could have been part of trial counsel's trial strategy because rulings on the motions may not have assisted with the defense. In any event, the record does not affirmatively demonstrate that the failure to obtain the rulings was due to counsel's ineffectiveness. *See Thompson*, 9 S.W.3d at 813.

### 2. *Trial Counsel Failed to Preserve Error Regarding the Extraneous Offense*

Mares contends that trial counsel failed to preserve the error raised in his first issue. Because we have resolved the first issue on its merits, trial counsel was not ineffective in failing to preserve the issue for our review.

### 3. *Trial Counsel Failed to Object to Inadmissible Hearsay*

Mares contends trial counsel failed to object to the testimony by the investigating officer, the complainant's sister, the complainant's boyfriend, and the nurse regarding the details of the sexual assault reported to each of the witnesses by the complainant. Mares contends that this testimony was hearsay that bolstered the complainant's credibility, and its admission could not have been part of trial counsel's strategy. However, the record demonstrates that trial counsel attempted to use the details of the various reports to reveal inconsistencies in the complainant's version of the events in an effort to discredit her testimony. The fact that another attorney might have pursued a different course of action or tried the case differently does not support a finding of ineffective assistance of counsel. *Owens v. State*, 916 S.W.2d at 717.

### 4. *Trial Counsel Failed to Obtain Service of a Subpoena On Bryan Stanley or Request a Continuance Based on the Absence of Bryan Stanley*

In Mares's motion for new trial, he requested a new trial because trial counsel failed to subpoena Bryan Stanley as a witness and failed to request a continuance based on Stanley's absence. At the hearing on the motion for new trial, James McKay testified that he had been retained as an investigator on the case. During the course of his investigation, McKay interviewed the complainant's boss, Bryan Stanley. McKay informed Mares's trial counsel that Stanley would be an appropriate witness because his statements contradicted what the complainant had said in the police report. Specifically, Stanley told McKay that the complainant seemed anxious to return back home after she returned from lunch. McKay admitted that Stanley did not have a conversation with the complainant to determine the reason she seemed anxious. McKay requested trial counsel to obtain a subpoena for

Stanley. Although the subpoena was issued, McKay was unable to obtain service because Stanley had moved. McKay stated that he asked trial counsel if he could get more time, but no continuance was requested. McKay was subsequently able to locate Stanley but had not spoken with him.

 Mares contends trial counsel was deficient in not obtaining the subpoena sooner or requesting a continuance when Stanley was unavailable. In order to show that counsel was ineffective for failure to call witnesses, the evidence must show that the witnesses were available and the defendant would benefit from their testimony. *See King v. State*, 649 S.W.2d 42, 44 (Tex.Crim.App.1983). McKay's testimony demonstrates that Stanley was not available because McKay could not determine his location prior to trial. However, Mares asserts that trial counsel should have requested a continuance to enable McKay to locate Stanley. If the trial court failed to grant the continuance, the conviction could be reversed if the record showed that the testimony was material to the case and appellant was prejudiced by his inability to produce it. *Leach v. State*, 548 S.W.2d 383, 385 (Tex.Crim.App.1977).

Our record does not reveal the reason trial counsel failed to take further action to secure the testimony of Stanley. Therefore, we must presume that the failure to secure that testimony was part of trial counsel's trial strategy. *Chambers v. State*, 903 S.W.2d at 32. Trial counsel may have believed that the jury would attribute the complainant's anxiety to return home to her testimony that she needed to lock the door because she had the only key. The record does not affirmatively demonstrate that the failure to secure Stanley's testimony was attributable to ineffectiveness; therefore, the presumption of reasonable professional assistance has not

been defeated. *Thompson v. State*, 9 S.W.3d at 813.

### 5. Trial Counsel Failed to Object During Cross–Examination of Mares and Witnesses at Punishment Phase

 Mares contends that trial counsel was ineffective in not objecting to the prosecutor's questioning of Mares and his witnesses regarding whether sexual assault is a violent crime and to the prosecutor's implication that Mares had been convicted twice for violent felonies. However, the record is silent as to why trial counsel failed to object. Because any allegation of ineffectiveness must be firmly founded in the record, Mares has failed to demonstrate that the failure to object was due to ineffectiveness. *Thompson v. State*, 9 S.W.3d at 812, 814.

### 6. Trial Counsel Failed to Object to Questioning of Probation Officer as an Expert

 Mares finally contends that trial counsel was ineffective in failing to object to the prosecutor's questioning of the probation officer as if she were an expert witness. Trial counsel had called the probation officer, Rita Arispe, to inform the jury regarding the numerous conditions the trial court could impose as conditions of probation, including jail time. The prosecutor questioned Ms. Arispe regarding whether it was more common for a person to be eligible for probation if they had no prior convictions, and Ms. Arispe responded probation would be more common if the defendant had no prior convictions. The prosecutor then asked Ms. Arispe whether she classified sexual assault and aggravated assault as violent crimes. (Mares had a prior conviction for aggravated assault with a deadly weapon.) Ms. Arispe responded that she would classify

those offenses as violent crimes. The prosecutor then asked the following:

Q. Based on your experience, if you were to know that a—a person had a—a—a—a prior probation for a violent offense such as an aggravated assault with a deadly weapon and then commit a sexual assault for which a jury convicted them of, would you agree that that person would not be a good candidate for probation?

A. Do you want my honest opinion?

Q. Yes.

A. I don't believe they make a good candidate.

During closing arguments, the prosecutor emphasized Ms. Arispe's testimony, stating:

Now, I want you to think about something else as well. Do you remember when I asked Ms. Arispe, the probation officer, well, how many of those probationers that are on your caseload, how many of them have actually been on felony probation before? And what did she say? She said she couldn't remember that any are. And then I asked her, knowing what the record of this Defendant is like where you have somebody that's been on probation before for a felony violent offense, would a person be a good candidate for probation like this Defendant if he committed a new violent offense? And what did she say? She said no. And this is the probation officer that works with people like the Defendant. And she's telling you, based upon her experience, that he is not a good candidate for probation. And she is so much telling you that he ought not to get probation. And she is the so-called expert of dealing with people like him. And I ask that you heed what she has to say because she does know. And he is not a good candidate for probation

based upon what he has done in the past and what he did to [the complainant] and what he will probably do in the future. And you can consider all of those things.

Trial counsel did not object to the prosecutor's argument.

Trial counsel's sole strategy at the punishment phase of the trial was to obtain a probated sentence. Not making an objection when the probation officer testified as an expert that Mares was not a good candidate for probation fell below an objective standard of reasonableness. *See Ortiz v. State*, 834 S.W.2d 343, 346 (Tex.Crim.App. 1992). There can be no strategy in failing to interpose an objection to that testimony. It was directly contrary to Mares's goal at the hearing, and it was inadmissible. Given the emphasis that the prosecutor placed on the probation officer's testimony during his closing argument, a reasonable probability exists that the jury relied on the probation officer's testimony as an expert in denying probation. This is sufficient to undermine our confidence in the outcome of the punishment phase of Mares's trial.

### CONCLUSION

The trial court's judgment is reversed as to sentencing, and the cause is remanded to the trial court for a new punishment hearing. *See* TEX.CODE CRIM. PROC. 44.29(b).