# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-04-00257-CR

**Pedro Estevane, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299TH JUDICIAL DISTRICT NO. 9010008, HONORABLE JON N. WISSER, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant Pedro Estevane of indecency with a child by contact and aggravated sexual assault and sentenced him to thirty-three years' confinement for sexual assault and ten years for indecency. *See* Tex. Pen. Code Ann. § 21.11 (West 2003), § 22.021 (West Supp. 2005). On appeal, appellant complains that the trial court erred in failing to require the State to elect the acts on which it would rely for conviction or instruct the jury during the punishment phase that no adverse inferences could be drawn from appellant's failure to testify; that the State erroneously commented on appellant's failure to testify during punishment and committed reversible error during the guilt/innocence phase of the trial by saying, "We believe her [the victim]"; and that appellant received ineffective assistance of counsel. We affirm the trial court's judgments of conviction.

**Factual Summary**

Appellant was charged with aggravated sexual assault and indecency by contact, both alleged to have been committed against his niece A.A. on or around October 14, 2000. The first count alleged in two paragraphs that appellant committed aggravated sexual assault by penetrating A.A.'s sexual organ with his finger and by causing her sexual organ to contact his sexual organ. The second count alleged that appellant committed indecency by contact by touching A.A.'s genitals.

A.A. was twelve years' old at the time of trial. She testified that appellant, her uncle, first molested her when she was seven or eight, when he came into her room one night, pulled down her shorts and underwear, and inserted his finger into her vagina. A.A. said that the inappropriate touching occurred at least four or five more times until about October 14, 2000, when she was nine years' old and appellant touched and rubbed his penis against her vagina. Shortly after the October 2000 assault, A.A. started experiencing vaginal burning, itching, and discharge. She and her mother went to the emergency room for treatment. Dr. Josh Trutt treated A.A. in the emergency room, and testified that A.A. became very distraught during the examination and that her demeanor caused him to believe she had been sexually abused. Dr. Trutt testified that A.A.'s symptoms indicated gonorrhea and chlamydia caused by sexual contact. A psychologist with expertise on child abuse viewed a videotaped interview with A.A. taken after her outcry and testified that A.A. was not asked inappropriate or leading questions during the interview.

Appellant testified in his own defense and denied the allegations. His wife testified that appellant never left their bedroom when A.A. spent the night and that A.A. volunteered to be around appellant even after the alleged abuse. Appellant also called an expert on false allegations of sexual abuse, who criticized the techniques used in A.A.'s interview, including the interviewer's

2

use of leading questions and anatomically correct dolls, and stated that inconsistencies in A.A.'s story raised concerns about whether she had been led into having false memories of abuse.

**Election of Offenses**

In his first point of error, appellant contends that the trial court erred in failing to require the State to elect the acts upon which it was relying for conviction. More than a year before trial, appellant filed a motion to require the State to elect specific dates for the offenses it intended to prove at trial, arguing that the indictment provided him inadequate notice. The trial court never ruled on the motion, and appellant did not mention it during the pre-trial conference or trial itself, nor did appellant ask the court to order the State to elect the incidents of abuse it was relying on for its charges or object to the jury charge.

The general rule is that if an indictment alleges one act of sexual assault or indecent contact and the proof at trial shows that the criminal conduct occurred more than once, the State must elect the act upon which it will rely for conviction. *O'Neal v. State*, 746 S.W.2d 769, 771 (Tex. Crim. App. 1988) (assault); *Stahle v. State*, 970 S.W.2d 682, 693 (Tex. App.—Dallas 1998, pet. ref'd) (indecency). However, the requirement to elect arises only upon a defendant's timely motion. *O'Neal*, 746 S.W.2d at 771 n.3.

Although appellant filed a motion referring to the election of offenses, that motion was filed more than a year before the trial began.[1] Appellant did not draw the court's attention to

---

[1] The motion, titled, "Motion to Require the State to Elect a Specific Date of Occurrence for Each Offense It Intends to Prove During Trial," stated that the indictment alleged that both offenses were committed "on or about" October 14, 2000, and asserted only that "[s]uch language does not provide adequate notice" as required by the constitutional or statutory provisions.

3

the motion at any time during trial, never raised the issue of an election of offenses during trial, and did not seek or obtain a ruling on his earlier-filed motion. By failing to seek and obtain a ruling on his motion to elect filed long before trial, appellant has waived this issue. *See* Tex. R. App. P. 33.1(a)(2); *Ramirez v. State*, 815 S.W.2d 636, 643 (Tex. Crim. App. 1991); *Miller v. State*, 83 S.W.3d 308, 319 (Tex. App.—Austin 2002, pet. ref'd). We overrule appellant's first point of error.

**Instruction on Appellant's Failure to Testify**

Appellant testified during the guilt/innocence phase, but did not testify during the punishment phase. In his second point of error, appellant contends that the trial court erred in failing to instruct the jury during the punishment phase that no adverse inferences could be drawn from his failure to testify. "*Upon request from a defendant*, a trial judge must instruct jurors that they may not draw any adverse inference from a defendant's failure to testify." *Beathard v. State*, 767 S.W.2d 423, 432 (Tex. Crim. App. 1989) (emphasis added). In other words, a defendant has the right to have the jury instructed that it may not draw adverse inferences from his failure to testify during the punishment phase, but he waives that right "unless either a request is made to the trial court to add the instruction to its charge at the punishment stage or an objection is made to the omission of the instruction." *De La Paz v. State*, 901 S.W.2d 571, 578 (Tex. App.—El Paso 1995, pet. ref'd); *see Brown v. State*, 617 S.W.2d 234, 238 (Tex. Crim. App. 1981) ("where a request is made to the trial court to add to its charge at the punishment stage of the trial an instruction on the failure of the defendant to testify, or an objection is made to the omission of such charge, it is reversible error if the trial court fails to honor that request or objection"); *Michaelwicz v. State*, No. 03-04-00019-CR, 2006 Tex. App. LEXIS 952, at *55-61 (Tex. App.—Austin Feb. 6, 2006, no pet. h.) (discussing

4

decision to request or not to request instruction and noting that defendants may not want instruction included in jury charge). Appellant did not request an instruction related to his failure to testify at punishment, nor did he object to the absence of this instruction in the court's charge. Therefore no error is presented. We overrule appellant's second point of error.

## Impermissible Jury Argument

In his third point of error, appellant contends that the trial court erred by allowing the State to comment in its closing argument on his decision not to testify during the punishment phase.[2] In his fourth point of error, he argues that the trial court erred in allowing the State to tell the jury during closing argument at the guilt/innocence phase that the State believed A.A.[3] However, appellant did not object to either remark, and thus waived any error in the State's arguments. *See Valencia v. State*, 946 S.W.2d 81, 82-83 (Tex. Crim. App. 1997) (quoting *Cockrell v. State*, 933

---

[2] The State, in its rebuttal to appellant's closing statement at punishment, said:

Perhaps you might think well, maybe he needs treatment, sex offender treatment. Well, I would submit how likely is it that is going to work. . . . [E]ven if he were deserving of sex offender treatment, how likely is it it is going to work. Mr. Castorena [a probation officer called as a defense witness at punishment] testified you have to admit your offense. The defendant took the stand two days ago, refused to admit the offense and called [A.A.] a liar. Mr. Castorena testified if you can't do that, you are not going to be able to go through counseling.

[3] During its closing statement at guilt/innocence, the State said:

You might be asking why we didn't bring [A.A.'s] father. He has a condition, and I am worried about him right now, but we have done our very best. He believes her. Her mother believes her. We believe her. And I would ask you to return a verdict of guilty on all counts . . . .

5

S.W.2d 73, 89 (Tex. Crim. App. 1996)) (defendant's failure to object to jury argument waives any complaint on appeal). We overrule appellant's third and fourth points of error.

## Ineffective Assistance of Counsel

Finally, in his fifth point of error, appellant contends that he received ineffective assistance of counsel, pointing to the failures to object discussed above.

To show ineffective assistance, a defendant has the heavy burden of showing that counsel's performance both fell below an objective standard of reasonableness and prejudiced his case. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Ex parte Nailor*, 149 S.W.3d 125, 130 (Tex. Crim. App. 2004); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999); *Blevins v. State*, 18 S.W.3d 266, 271 (Tex. App.—Austin 2000, no pet.). Our review of counsel's effectiveness is highly deferential, and we apply a strong presumption that the attorney's conduct was reasonable. *Nailor*, 149 S.W.3d at 130; *Thompson*, 9 S.W.3d at 813. The defendant bears the burden of bringing forth a record showing that counsel's performance was not based on sound trial strategy. *Thompson*, 9 S.W.3d at 813. We look to the totality of the representation and the circumstances of each case in evaluating the effectiveness of counsel. *Id*. To defeat the presumption that assistance was effective, "[a]ny allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Id*. Without an evidentiary hearing on the issue, the defendant's burden is difficult to meet, and rarely will we hold that counsel was ineffective. *Nailor*, 149 S.W.3d at 130-31; *Blevins*, 18 S.W.3d 271-72 (quoting *Thompson*, 9 S.W.3d at 813).

### 1.  *Ineffective Assistance of Counsel During the Guilt/Innocence Phase*

Appellant argues his counsel's performance was deficient during the guilt/innocence phase because he did not require the State to elect the offenses on which it was relying for conviction or object to the State's remark in closing arguments that the State believed A.A.

Although A.A.'s testimony largely focused on the last incident that occurred, the State also elicited detailed testimony about at least three other assaults, the earliest of which occurred when she was seven.  In this case, appellant had the right to demand an election, had he wished to assert it.  *See O'Neal*, 746 S.W.2d at 771; *see also Yzaguirre v. State*, 957 S.W.2d 38, 40 (Tex. Crim. App. 1997) (trial counsel failed to request election; "counsel was probably ineffective in failing to do so").  However, counsel's failure to raise the issue at trial and seek and obtain a ruling does not automatically amount to ineffective assistance.  Instead, there could have been strategic reasons for counsel's failure to ask that the State be required to elect an offense.  If the State does not make an election, it is barred from future prosecution of any offense within the scope of the indictment and the evidence introduced at trial.  *Ex parte Goodbread*, 967 S.W.2d 859, 861 (Tex. Crim. App. 1998) ("trial upon the indictment bars prosecution only for offenses for which proof was offered at trial . . . the State or the trial court can exclude an instance of conduct from the jeopardy bar through an election"); *see Sledge v. State*, 953 S.W.2d 253 , 259 n.4 (Tex. Crim. App. 1997) (Mansfield, J., concurring) (if State does not identify specific criminal act used for conviction, "State may well be unable, on double jeopardy grounds, to retry a defendant acquitted in a cause with facts similar to the present case where it elected to present evidence of one or more acts of criminal sexual misconduct"; "acquittal would, in effect, apply to *all* acts of criminal sexual misconduct involving

7

the defendant and the same victim that occurred during the period prior to the date of presentment of the indictment"). When there is a reasonable trial strategy that counsel could have been pursuing and the record does not contradict such a strategy, we cannot conclude that counsel's performance was deficient. *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001). Counsel's failure to seek an election may have been strategic, and the record is silent as to why counsel acted as he did.

As for the State's comment during closing argument at the guilt/innocence phase that the prosecutors believed A.A., we agree that the remark was inappropriate: an attorney may not bolster the credibility of a witness by presenting unsworn testimony. *Menefee v. State*, 614 S.W.2d 167, 168 (Tex. Crim. App. 1981). However, the record is silent as to whether there was a strategic reason for counsel's failure to object. Further, appellant has not shown that counsel's failure to object to this comment prejudiced the defense. *See Nailor*, 149 S.W.3d at 130. Based on the record before us, when counsel's performance is viewed as a whole, appellant has not shown that counsel was ineffective at the guilt/innocence phase of trial.

### 2. *Ineffective Assistance of Counsel During the Punishment Phase*

Appellant argues that he was denied effective assistance of counsel because counsel did not object to the State's questioning of a probation officer called by appellant as a defense witness, object to the State's comment on appellant's failure to testify during the punishment phase, or request a jury instruction on his failure to testify at punishment.

After the jury found appellant guilty of both counts, the trial progressed to the punishment phase. The State called A.A., who testified about the effect the abuse has had on her, and an immigration official, who testified that appellant would be deported if he were given

8

probation and that once appellant finished any jail time, he would be taken into immigration custody and placed in deportation proceedings. Appellant called eight witnesses—six character witnesses who testified that probation was appropriate; his niece, who testified that appellant never molested her; and Benjamin Castorena, a probation officer who testified about how parole works.

Castorena testified on direct examination about the probation system and some of the requirements placed on probationers. On cross-examination, Castorena was asked without objection about sex offender counseling, which is "one of the main conditions of . . . probation for a sex offender." He testified that during sex offender counseling, the offender must admit to his crime. Castorena said, "If they deny any kind of guilt or deny what they did was wrong, that can be an issue and sometimes that gets them kicked out of therapy."

After the evidence was concluded, the State made a very brief closing statement, simply asking the jury to consider the evidence and stating that it was preserving its comments until after appellant's closing statements. Appellant's counsel then made his closing statement, during which he stated:

> Now, the State, I suggest, I foresee is going to get up here, everyone is coming up here and standing for Pedro. Where is Pedro. We don't hear Pedro saying I'm sorry, we don't have Pedro coming in here begging for forgiveness.
>
> I suggest to you I recommended that. As you know, there is other things going on, there is other legal consequences going on, immigration going on, and I have to protect him because other things, and as you hear what they did with immigration, we have got other challenges to face. That is the way the system works.
>
> If he stands up and says that, know that I am fighting on a lot of fronts to make sure that these little girls don't lose their father, that Beatriz doesn't lose her home.

9

After counsel's closing argument, the State made a rebuttal argument, during which it said:

> [B]ut even if he [appellant] were deserving of sex offender treatment, how likely is it [that] it is going to work. Mr. Castorena testified you have to admit your offense. The defendant took the stand two days ago, refused to admit the offense and called [A.A.] a liar. Mr. Castorena testified if you can't do that, you are not going to be able to make it through counseling.[4]

On appeal, appellant argues that Castorena was improperly allowed to testify as "an expert on the subject of sex offender therapy and appellant's chances of succeeding in sex offender therapy," and that counsel's failure to object to this line of questioning cannot be characterized as strategic and amounted to ineffective assistance. Appellant also argues that the State's remark during its rebuttal closing argument impermissibly commented on his failure to testify at punishment and that counsel's failure to object was ineffective. Finally, appellant argues that counsel was ineffective in not requesting a jury instruction that no adverse inferences could be drawn from appellant's failure to testify during the punishment phase.

Appellant relies on *Mares v. State* to support his assertion that he received ineffective assistance of counsel. 52 S.W.3d 886 (Tex. App.—San Antonio 2001, pet. ref'd). The defendant in *Mares* was convicted of sexual assault after having been convicted previously of aggravated assault with a deadly weapon. *Id*. at 889, 892. Counsel argued during the punishment phase that the defendant should be placed on probation and called a probation officer to explain to the jury how probation worked. *Id*. at 892-93. On cross-examination, the State asked whether, in the officer's

---

[4] This comment serves as the basis of appellant's complaints both that the State committed reversible error by making the comment and that counsel was ineffective in failing to object to the comment.

experience, someone who had been previously convicted of "a violent offense such as an aggravated assault with a deadly weapon and then commit[ed] a sexual assault" would be a good candidate for probation for another violent offense. *Id*. at 892. The probation officer said that her "honest opinion" was that such a person would not be a good candidate, and in closing argument the State placed considerable emphasis on her testimony, going so far as to call her a "so-called expert of dealing with people like" the defendant, and arguing that her testimony showed the defendant should not be placed on probation. *Id*. The court of appeals held that "[n]ot making an objection when the probation officer testified as an expert that Mares was not a good candidate for probation fell below an objective standard of reasonableness." *Id*. at 893.

*Mares*, although similar, is distinguishable from the case at bar. First, in *Mares*, the probation officer was asked whether someone like the defendant should be given probation, and she answered in the negative. *Id*. In this case, Castorena was asked about terms of probation, including sex offender counseling, and was asked whether admission of guilt was a necessary element. He answered that it was, but was not asked whether someone who denied his guilt at trial was an appropriate candidate for probation.[5] In other words, contrary to appellant's contention, Castorena was not asked to "testif[y] as an expert that [appellant] was not a good candidate for probation." *See id*. Indeed, we are not persuaded that Castorena's testimony was inadmissible—after being called as a witness by appellant, he testified only about terms of probation and requirements of therapy, issues about which he had personal knowledge through his employment and issues related to the

---

[5] The State attempted to ask Castorena whether someone who committed the same offense as appellant "deserve[d] probation," but counsel objected and the trial court sustained the objection.

11

questions appellant asked on direct examination. He was not asked whether appellant (or a similar hypothetical person) would be an appropriate candidate for sex offender treatment or probation. Further, the State made only brief reference to Castorena's testimony in closing arguments and did not place emphasis on it, whereas in *Mares*, it appears that the State greatly emphasized the probation officer's testimony and her opinion that someone like the defendant was not a good candidate for probation. *See id.* Appellant has not shown that counsel's performance in the area of Castorena's cross-examination fell below an objective standard of reasonableness.

We now consider whether counsel should have objected to the State's remark during closing that referred to appellant's denial of guilt at the guilt/innocence phase. A defendant's privilege against self-incrimination applies at both the guilt-innocence and the punishment phases of the trial, and waiver of the privilege at the guilt-innocence phase of the trial does not waive the privilege at the punishment phase of the trial. *Wilkens v. State*, 847 S.W.2d 547, 553 (Tex. Crim. App. 1992); *see* U.S. Const. amends. V, XIV; Tex. Const. art. I, § 10; Tex. Code Crim. Proc. Ann. art. 38.08 (West 2005). The State may not indirectly comment on a defendant's failure to acknowledge his guilt during the punishment phase of a trial. *See Swallow v. State*, 829 S.W.2d 223, 225 (Tex. Crim. App. 1992); *Sauceda v. State*, 859 S.W.2d 469, 474-75 (Tex. App.—Dallas 1993, pet. ref'd) (accused should not be placed "in the paradoxical condition of saying, 'I am sorry for a crime of which I am not guilty'"). However, defense counsel may open the door to the issue by attempting to explain or otherwise minimize the significance of the defendant's failure to testify, and in such a case, a prosecutor's comment on the defendant's failure to testify might not be reversible error. *See Coleman v. State*, 643 S.W.2d 947, 952 (Tex. Crim. App. 1982) ("The appellant, having

12

first brought the matter of appellant's failure to testify to the jury's attention, cannot complain of the prosecutor's argument."); *Hunter v. State*, 956 S.W.2d 143, 145 (Tex. App.—Amarillo 1997, pet. ref'd) ("All recognize the general rule barring a prosecutor from commenting upon the failure of a defendant to testify. Yet, like most rules, this too has exceptions. That invoked here concerns the theory of invitation. That is, while the door is closed to the prosecutor making such a remark, the power lies with the defendant to open it."); *see also Franks v. State*, 574 S.W.2d 124, 127 (Tex. Crim. App. 1978) (noting cases in which counsel attempted to explain or minimize defendant's failure to testify, thus allowing State to refer to defendant's silence).

Counsel's argument during the punishment phase was that appellant should be granted probation. Counsel attempted to explain during closing arguments why appellant should be granted probation despite having denied his guilt at trial, explaining that he himself had recommended that appellant not testify because there were other legal ramifications if appellant were to testify at punishment. By so doing, counsel opened the door to the State's allusion to appellant's failure to testify. *See Coleman*, 643 S.W.2d at 952; *Franks*, 574 S.W.2d at 127. Based on the record before us, we cannot hold that counsel was ineffective in failing to object to the State's remark.

Finally, we consider whether counsel was ineffective in failing to request a jury instruction that no adverse inferences could be drawn from appellant's decision not to testify in the punishment phase of the trial. Appellant's counsel was clearly conscious of the risk of adverse inferences posed by appellant's failure to testify and, as noted above, tried to mitigate the impact of the decision not to testify by explaining to the jury that there could be other adverse legal consequences for appellant and his family if he testified. Further, making such a request is a matter

of trial strategy in that counsel may have wanted to avoid further emphasis on appellant's failure to testify. *See Calderon v. State*, 950 S.W.2d 121, 132-33 (Tex. App.—El Paso 1997, no pet.); *Henson v. State*, 734 S.W.2d 119, 120 (Tex. App.—Houston [1st Dist.] 1987, pet. ref'd); *see also Michaelwicz*, 2006 Tex. App. LEXIS 952, at *55-61 ("Defense counsel may not want the 'no adverse inferences' instruction given for a variety of reasons."). Based on this record, we cannot hold that counsel was ineffective in failing to request an instruction that no adverse inferences could be drawn from appellant's failure to testify. *See Garcia*, 57 S.W.3d at 440.

There were possible strategic reasons for counsel's acts or omissions during the punishment phase, and the record does not "contain sufficient information to adequately address and resolve" appellant's assertions that counsel's performance was deficient. *See Nailor*, 149 S.W.3d at 131; *Garcia*, 57 S.W.3d at 440. Based on this record, when viewed as a whole, we cannot hold that appellant received ineffective representation during the punishment phase.

## Conclusion

Having overruled appellant's points of error, we affirm the judgments of conviction.

_____

David Puryear, Justice

Before Chief Justice Law, Justices Patterson and Puryear

Affirmed

Filed: March 2, 2006

Do Not Publish