# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-07-00392-CR

**David Wayne Smith, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 403RD JUDICIAL DISTRICT NO. 3032525, HONORABLE BRENDA KENNEDY, JUDGE PRESIDING

### M E M O R A N D U M   O P I N I O N

A jury convicted appellant David Wayne Smith of the offenses of aggravated sexual assault of a child, indecency with a child by contact, and indecency with a child by exposure. *See* Tex. Penal Code Ann. § 21.11(a)(1), (2) (West 2003), § 22.021(a)(1)(B) (West Supp. 2008). He was assessed a fine of $10,000 and sentenced to serve forty years in prison. Smith contends that he was denied effective assistance of counsel. We affirm the district court's judgment.

David Wayne Smith was indicted for various acts of sexual abuse of a child. Smith and Kristi Lynn Daniel—the mother of the child, Z.P.—were married in December 1999. They were divorced in 2003. Z.P. was five years old at the time of the marriage and nine years old at the time of the divorce. The alleged acts of aggravated sexual assault occurred during Daniel's marriage to Smith. Z.P. first complained of sexual abuse approximately six months after the divorce.

In three counts, Smith was indicted for aggravated sexual assault of a child, indecency with a child by contact, and indecency with a child by exposure. A jury convicted Smith on all three counts and sentenced him to forty years for the first count, fifteen years for the second count, and seven years for the third count. All sentences were to run concurrently. In addition, the jury assessed a fine of $10,000 for the first count of aggravated sexual assault. Smith appeals, arguing that he received ineffective assistance on the grounds that his counsel failed to adequately question and/or challenge certain jurors during voir dire and that his counsel failed to object to improper jury argument.

We evaluate claims of ineffective assistance of counsel against the standard set forth in *Strickland v. Washington*. *See* 466 U.S. 668, 687 (1984); *Hernandez v. State*, 988 S.W.2d 770, 774 (Tex. Crim. App. 1999). In deciding a claim of ineffective assistance of counsel, we must determine whether an attorney's performance was deficient and, if so, whether that deficiency prejudiced the defense. *Strickland*, 466 U.S. at 687; *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). An attorney's performance is deficient if it falls below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688; *Thompson*, 9 S.W.3d at 812. Deficient performance is prejudicial when, but for the attorney's unprofessional conduct, there is a reasonable probability that the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 694; *Thompson*, 9 S.W.3d at 812. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland*, 466 U.S. at 694; *Thompson*, 9 S.W.3d at 812. In determining whether an attorney's performance was deficient, we apply a strong presumption that the attorney's conduct was within the range of reasonable professional assistance. *Id.* at 814.

2

We review the effectiveness of counsel in light of the totality of the representation and the circumstances of each case. *Thompson*, 9 S.W.3d at 813.

In most cases, an undeveloped record on direct appeal is insufficient to satisfy the dual prongs of *Strickland* because the reasonableness of counsel's decisions often involves facts not appearing in the appellate record. *Rylander v. State*, 101 S.W.3d 107, 110 (Tex. Crim. App. 2003). Without evidence of the strategy and methods involved concerning counsel's actions at trial, an appellate court should presume a sound trial strategy. *See Thompson*, 9 S.W.3d at 814. Where an allegation of ineffective assistance of counsel is not raised in a motion for new trial, trial counsel has no opportunity to explain his conduct, and absent such opportunity, an appellate court should not find deficient performance unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005) (quoting *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001), *cert. denied*, 537 U.S. 1195 (2003)).

Smith argues that he was denied effective assistance of counsel in the jury selection process. According to Smith, his trial counsel failed to pursue several panel members' biases for cause, failed to preserve error when the district court denied the challenges for cause he did pursue, and failed to request extra peremptory strikes against certain "highly inflammatory" panel members. Smith points to the alleged biases of jurors Lam and Duncan, arguing that his counsel should have

questioned Lam about her experience with Child Protective Services and should have questioned both Lam and Duncan about their ability to consider probation for aggravated sexual assault.[1]

The defense may challenge a potential juror for cause if that juror has a bias or prejudice in favor of or against the defendant or against any of the law applicable to the case upon which the defense is entitled to rely. *See* Tex. Code Crim. Proc. Ann. art. 35.16(a)(9), (c)(2) (West 2006). A defendant's right to challenge a juror for cause, however, is a right to be exercised at the option of the defendant and is subject to waiver and is, therefore, also subject to the legitimate strategic or tactical decision-making processes of defense counsel during the course of trial. *State v. Morales*, 253 S.W.3d 686, 697 (Tex. Crim. App. 2008) (citing *Delrio v. State*, 840 S.W.2d 443, 445 (Tex. Crim. App. 1992)).

The following exchange occurred between juror Lam and Smith's counsel:

State: Where do you work?

Lam: I [sic] employed by the county.

State: What do you do for the county?

Lam: Accounting.

State: Accounting for the—Travis County?

Lam: Yes. And then manage awhile [sic] monitoring the budget with the CPS board in which in turn provided—providing vouchers for the children within CPS.

---

[1] In addition, Smith initially complained of Lam and another juror, Wolf, as indicating that they knew someone who had been abused or had been a victim of abuse themselves. In his reply brief, Smith concedes this argument as based on an incorrect reading of the record.

State: Are you in a general position in the accounting department, or are you actually assigned to watch over CPS accounts?

Lam: That's it.

State: That's it, the second one?

Lam: Yes.

State: Okay. Is that something that creates a bias in favor of CPS in your mind, or do you consider yourself to be an impartial person with regard to CPS activity? Does that make sense?

Lam: I [sic] work with CPS for so long, so I don't know exactly.

State: Again, with the—the "I don't know" puts us right in the middle, and that's fine normally, but we need to know yes or no.

Lam: Probably not.

State: Probably no?

Lam: Yeah, I mean—no.

State: You think you would be biased in favor of the department?

Lam: Yeah, I would be, yeah, probably in favor of the department.

State: All right. We may come back to that. Thank you very much That was No. 36.

No further questions were asked of Lam with respect to any potential CPS bias. According to Smith, the exchange between counsel and Lam indicates that Lam was biased, and, according to Smith, no "reasonable lawyer in a sexual abuse of a child case would want to have a juror possibly biased in favor of CPS."

5

Texas law addressing juror bias in connection with a claim for ineffective assistance is consistent with the proposition that, in most cases, an undeveloped record on direct appeal is insufficient to satisfy the dual prongs of *Strickland* because the reasonableness of counsel's decisions often involves facts not appearing in the appellate record. *Rylander*, 101 S.W.3d at 110. In *Delrio v. State*, for example, the Texas Court of Criminal Appeals held that trial counsel's assistance was not ineffective where, in a trial for cocaine possession, counsel failed to challenge for cause or use a peremptory challenge against an ex-narcotics officer who knew the defendant through his work as a narcotics officer and stated that he could not be impartial. *Delrio v. State*, 840 S.W.2d 443, 447 (Tex. Crim. App. 1992). In so holding, the court explained that trial counsel's failure to strike the juror who admitted that he "couldn't be impartial" could not be considered ineffective assistance based on a review of the "cold record." *Id.* at 445, 446. It was conceivable, in the eyes of the court, that counsel's failure to challenge the juror was consistent with a legitimate trial strategy. *Id.* at 447. The court explained that, based on what counsel may have learned from his client about his client's relationship with this juror, counsel may have believed that the juror's impartiality actually favored his client. *Id.* at 446. Further, even if the juror were biased against his client, the court could conceive of circumstances in which it might be advantageous to have that person on the jury:

> Indeed, Martinez is the only person with a Hispanic surname to serve on the jury. A testifying informant directly negotiated and arranged the transaction in question mainly with appellant's brother; all active participants in the actual delivery, including the informant (but excluding a DPS agent "controlling" the "wired" informant who monitored them aurally and visually from a distance) are Hispanic. Appellant had elected to have the jury assess punishment. He faced a sentence, enhanced by previous controlled substance offenses, of twenty years to life imprisonment and a fine of $500,000. Counsel may have believed that an ex-narcotics officer, although likely disposed to render a guilty verdict, would be

6

more perceptive about relative culpability of parties involved in such a transaction, or might be less inclined to impose sentence on the sterner end of the spectrum because more inured to the nature of the offense. If the State's case appears from the vantage of voir dire to be a strong one, such a strategy, while undoubtedly risky, would not be wholly unjustified. That appellant was ultimately assessed the maximum punishment means only that the risk did not pay off; it does not mean the strategy was unacceptable from the perspective of jury selection.

*Id.* at 446-47. Because the court was presented with an undeveloped record on direct appeal, the evidence was insufficient to overcome the strong presumption under *Strickland* against finding ineffective assistance. *Id.* at 447.

Similarly, in *Jackson v. State*, the Texas Court of Criminal Appeals held no ineffective assistance of counsel where, in a trial for robbery, defense counsel failed to strike a juror who had been a victim of robbery and, when questioned, stated that this circumstance would probably prevent him from being impartial. 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). In so holding, the court cited *Delrio* and noted that any number of legitimate trial strategies could explain defense counsel's actions but explained that, in the absence of a developed record on direct appeal, there was no need to speculate as to why counsel did what he did:

We could speculate as to why appellant's trial counsel decided not to challenge or strike Supinski, as we did in *Delrio*, but there is no need to do so. The speculations we offered in *Delrio* were not material to our determination that counsel in that case had not been proven ineffective. To hold trial counsel's decision not to strike or challenge venire member Supinski in the instant case as ineffective assistance would also call for speculation. The record in the instant case lends no support for such holding.

*Id.*

7

Smith relies on *Virgil v. Dretke* to support his argument that he was denied effective assistance of counsel when trial counsel failed to object to jurors who admitted bias. 446 F.3d 598 (5th Cir. 2006). In *Virgil*, the Fifth Circuit held that counsel's failure to challenge jurors who admitted bias against the defendant amounted to ineffective assistance of counsel under *Strickland*. *Id.* at 609-10. In *Virgil*, however, both jurors stated that they could not be fair and impartial in assessing the case. *Id.* at 603-04. Here, Lam's statements in voir dire were not that she could not be fair and impartial in assessing the case but that she would "probably" have a favorable bias "in regard to CPS activity." A probable bias "in regard to CPS activity" is not comparable to a statement admitting bias against the defendant, and the facts upon which the decision in *Virgil* were based are, therefore, distinguishable.

Here, we could speculate as to any number of legitimate trial strategies on which trial counsel could have based his decision not to question Lam further about her connection with CPS or to challenge her for bias based on the statements she did make,[2] including additional information he may have learned from jury questionnaires or the prosecution's questioning. As in each of the cases cited above, no motion for new trial was filed, and we have no developed record from which to determine why defense counsel acted in the way that he did. In the absence of such record, we presume a sound trial strategy. *See Ortiz v. State*, 93 S.W.3d 79, 88-89 (Tex. Crim. App. 2002); *Thompson*, 9 S.W.3d at 814.

---

[2] Although Smith argues that defense counsel should have either questioned Lam further or challenged her as biased, it is not clear that her statement that she might favor CPS would even rise to a bias against the defense that would be grounds for a challenge.

In addition to Smith's contention that he received ineffective assistance because of his counsel's failure to address Lam's potential bias with regard to CPS, Smith contends that his counsel's failure to challenge jurors who indicated that they could not consider the full range of punishment amounted to ineffective assistance. During voir dire, by a show of hands, both Lam and Duncan indicated that they agreed with another juror who answered in the negative when asked whether there were any:

> facts and circumstances that you could imagine in your mind that would fit the offense, not necessarily this case, this defendant, having anything to do with this case necessarily.
>
> Is [sic] there any facts and circumstances that you have in your mind that might meet the definition of this offense that you would be able to consider probation for is the question. That is the question.

According to the juror with whom Lam and Duncan agreed: "I don't see any probation in the picture there. It's aggravated sexual assault. It's a minor." No further questions were asked of Lam or Duncan with respect to probation.

In *Goodspeed v. State*, the Texas Court of Criminal Appeals addressed this issue on almost identical facts. 187 S.W.3d at 391-92. The appellant had been convicted of aggravated sexual assault of a child. The court of appeals agreed with appellant that he had not been afforded effective assistance of counsel because, among other reasons, counsel had not asked any questions of prospective jurors to determine whether they could consider probation as a sentencing option. *Goodspeed v. State*, 120 S.W.3d 408, 411-12 (Tex. App.—Texarkana, 2003, pet. granted). The Texas Court of Criminal Appeals disagreed, explaining that defense counsel's stated reason for

9

failing to ask questions—that the State had adequately covered the issues in its questioning—"could be a legitimate trial strategy under the appropriate circumstances." *Goodspeed*, 187 S.W.3d at 392-93. The Texas Court of Criminal Appeals also suggested various other legitimate trial strategies, explaining that, for example, defense counsel:

> might have been afraid that more punishment-oriented jurors could influence others jurors; he may have been satisfied with the composition of the panel; he may have refrained from asking questions about probation to avoid giving the State more information on which to exercise peremptory challenges; he may have believed that such questioning would be perceived as admitting there was credible evidence of guilt; or he may have had any combination of these reasons. Counsel might also have believed that the facts of this aggravated assault of a child case were so severe that there was little or no possibility of appellant receiving probation upon conviction.

*Id.* at 393-94. Although the court recognized that these reasons were speculative, it reiterated that this "is the problem with trying to evaluate an ineffective assistance claim in which defense counsel has not been given an opportunity to respond, and why such claims are usually rejected." *Id.* at 394. Here, as in *Goodspeed*, we could speculate as to any number of legitimate trial strategies on which trial counsel could have based his decision not to challenge jurors Lam and Duncan for an inability to consider the full range of punishment, and, in the absence of a developed record on appeal, we presume a sound trial strategy. *See Ortiz*, 93 S.W.3d at 88-89; *Thompson*, 9 S.W.3d at 814.

Defense counsel's failure to question or challenge jurors both for probable bias "in regard to CPS activity" and for a possible inability to consider probation does not amount to conduct "so outrageous that no competent attorney would have engaged in it." *Goodspeed*, 187 S.W.3d at 392. The record does not support Smith's assertion that, in failing to challenge or engage in

10

further questioning with these jurors on these subjects, his counsel acted outside the bounds of what a competent attorney would do. *See id.*

Smith also argues that defense counsel's representation was deficient because defense counsel failed to object to improper jury argument. Permissible jury argument includes summation of the evidence, reasonable deduction from the evidence, answer to argument of opposing counsel, and plea for law enforcement. *Allridge v. State*, 762 S.W.2d 146, 155 (Tex. Crim. App. 1988). To warrant reversal, argument must be manifestly improper, violate a statute, or inject new, harmful facts into the case. *Everett v. State*, 707 S.W.2d 638, 640 (Tex. Crim. App. 1986).

Smith objects to the following statement of the prosecutor at the guilt/innocence phase of trial:

> I agree with Ms. Wetzel, either David is here and he's guilty of what [Z.P.] said he did to her or she is the most malicious, cunning, vengeful eight year old you have ever met. And I don't know about you, but that little girl who was testifying yesterday, who is sitting here right now, that's not the girl I know.

Citing *Menefee v. State*, Smith argues that the prosecutor attempted to improperly bolster the credibility of his witness in the form of his own personal opinion. 614 S.W.2d 167, 168 (Tex. Crim. App. 1981) (holding that, in light of the prosecutor's experience, in a case where only one witness could identify appellant as having committed the offense, the prosecutor's comment that "I don't believe I have ever seen anybody that I thought was any more honest than she is" would have unduly influenced the jury).

To determine whether jury argument is improper, we assess the argument as a whole and in context. *Cruz v. State*, 225 S.W.3d 546, 549 (Tex. Crim. App. 2007). Here, the argument at

11

issue was in reference to previous argument by Wetzel, the other prosecuting attorney. Wetzel had

previously argued:

> You're never going to know 100 percent in criminal cases. No one ever knows
> 100 percent. The only people who know 100 percent what happened are [Z.P.] and
> the defendant, the people who were there.
>
> It's our job to listen to the witnesses who testified and make a decision, and that is
> what I want to talk to you about now. This is a case where somebody is lying, and
> it is our job, it's your job, to figure out who is. [Z.P.] is a real intelligent child. She
> is 12, almost 13 years old, and she has been consistent about what happened to her.
>
> This is not a case where here's a child who isn't quite sure what happened and is
> confused and is easily manipulated or influenced. She is clear about what happened
> to her, and she was clear in court about what happened to her.
>
> She is either telling you the truth and she was the victim of some pretty bad, horrific
> abuse from the very young age of four all the way up to age eight at the hands of her
> stepfather, someone who she cared about and trusted, or she is a really disturbed,
> manipulative liar who would at age eight come up with a story, tell her mother, keep
> it going with the forensic interviewer, add a lot of sexual details, and then continue
> that consistently for four years all the way up to the witness stand. So it's your job
> —so she is either telling the truth or lying.
>
> And just like [Z.P.], the defendant who told you in court this never happened, she has
> no reason to make this up that I know of, but I'm just here to say it never happened,
> he is either telling the truth or he is lying. They can't both be true.
>
> And nobody is confused. This is not something that you get confused about, whether
> this happened to you or whether you did this to a little child.

Read in context, the prosecutor's statement that "I agree with Ms. Wetzel" is not a comment on the

prosecutor's personal belief about the weight of the evidence but simply a comment that she agrees

with Wetzel that this is a "he said, she said" case in which the jury's job is to judge the credibility

of the witnesses and to decide who is telling the truth.

12

The prosecutor's next sentence—"And I don't know about you, but that little girl who was testifying yesterday, who is sitting here right now, that's not the girl I know" addresses the jury's duty to determine whether Z.P. is "the most malicious, cunning, vengeful eight year old you have ever met." The disputed statement—"that's not the girl I know"—was a reference to Z.P.'s testimony and testimonial demeanor the previous day. Although the prosecutor's use of the word "I" tends to inject an element of personal belief, it is evident from the context of the statement that the prosecutor was simply conveying that Z.P.'s testimony and testimonial demeanor is inconsistent with a "malicious, cunning, vengeful eight year old." *See Cruz*, 225 S.W.3d at 549 (use of the word "I" is not per se impermissible; no particular "trigger" word automatically makes jury argument improper).

The prosecutor's comment, even if objected to, is not grounds for reversal and, therefore, cannot be the basis for a claim of ineffective assistance of counsel. *See Strickland*, 466 U.S. at 687; *Thompson*, 9 S.W.3d at 812. While the district court might have sustained an objection to the argument and given a requested instruction to disregard, the comment at issue warranted no more. Read in context, the prosecutor's disputed comment was a comment about the nature of the case, not a statement of personal belief as to the weight of the evidence and, therefore, not manifestly improper. *See Everett v. State*, 707 S.W.2d at 640. Even if the failure to object to this argument were deficient performance, it did not unfairly prejudice the defense.

Smith also complains that the prosecutor improperly commented on his non-testimonial demeanor in the following argument to the jury:

And you know what? There's not one bit of remorse either. You know, this isn't a guy who thinks that there is even a reason for this happening, no need for any treatment, no counseling, nothing like that. Just didn't happen according to him. The little girl is lying, that is what he wants you to think. But you know what? He is sitting over there right now watching, looking like a pretty normal guy. Look at him. His world is changing right now. You know why? Because he knows that [Z.P.] told the truth. He knows that she has no reason whatsoever to lie about that. He knows that the medical evidence in this case leaves no doubt about what was happening back then, and he knows he is guilty.

Smith relies on *Good v. State* to support his contention that the prosecutor's argument was improper and that defense counsel's failure to object amounted to ineffective assistance. 723 S.W.2d 734, 738 (Tex. Crim. App. 1986). In *Good*, the disputed argument was the following:

> You observed his [appellant's] demeanor in this courtroom and I submit to you it is a reasonable deduction that he would have reacted in some way, shown some concern. He has just sat there cold, unnerved, uncaring, just like he was like that morning [of the burglary]. That tells you a great deal about him. That has nothing to do with articulation or being able to speak or education. No, that has to do with the fact that he is guilty and he could care less this week that he is guilty and he could care less back on June 9th, 1983.

> We have heard from the evidence in this case what kind of man your [sic] are dealing with, and, you know, it was interesting that Mr. Parks [defense counsel] got up here and talked about, "It is terrible, it is tragic, it is brutal and we all feel sorry for [the complainant]. Anybody would be able to sympathize, would be able to have some concern for what she went through." Why in the world didn't we see any of that in his [appellant's] demeanor over here? I mean he is conceding—

> . . . .

> You know, you can be orderly and yet show something on your face.

14

*Id.* at 735. The Texas Court of Criminal Appeals held that the argument was improper and reversible error because it "invited the jury to speculate upon appellant's neutral or passive courtroom demeanor to find him guilty" and because the argument encouraged the jury to find guilt based on the appellant's lack of overt sympathy for the claimant. *Id.* at 738.

Here, however, the prosecutor's direction to the jury to "[l]ook at him [Smith]" was not made in an effort to encourage an inference of guilt based on Smith's demeanor. In fact, the prosecutor's statement is inconsistent with any such inference. On the one hand, the prosecutor says that Smith "is looking like a pretty normal guy" but, on the other, asserts that Smith's "world is changing" because he "knows he is guilty." Rather than commenting on Smith's demeanor during trial to infer guilt—right now he looks "like a pretty normal guy"—the prosecutor is commenting on what Smith's demeanor will be at some future time because "his world is changing" because he "is guilty."

Like the first statement of which Smith complains, even if objected to, the prosecutor's comment is not grounds for reversal and, therefore, cannot be the basis for a claim of ineffective assistance of counsel. *See Strickland*, 466 U.S. at 687; *Thompson*, 9 S.W.3d at 812. Again, even if defense counsel had objected to the argument, it warranted no more than an instruction to disregard. Read in context, the prosecutor's disputed comment did not instruct the jury to infer guilt based on non-testimonial demeanor and, therefore, was not manifestly improper. *See Everett*, 707 S.W.2d at 640. Even if the failure to object to this argument were deficient performance, it did not unfairly prejudice the defense.

15

Smith also complains of defense counsel's failure to object to argument made during the punishment phase of trial. Smith argues that trial counsel was ineffective in failing to object to a line of questioning of a probation officer, in which the officer testified as to the suitability of Smith for probation.

Smith relies on *Mares v. State* to support his assertion that he received ineffective assistance of counsel. 52 S.W.3d 886 (Tex. App.—San Antonio 2001, pet. ref'd). Mares was convicted of sexual assault after having been previously convicted of aggravated assault with a deadly weapon. *Id.* at 889, 892. During the punishment phase, as here, defense counsel called a probation officer to explain probation procedures to the jury, including outlining conditions that the trial court could impose. *Id.* at 892-93. On cross-examination, the prosecutor asked whether, in the officer's opinion, someone who had been previously convicted of "a violent offense such as an aggravated assault with a deadly weapon and then committed a sexual assault" would be a good candidate for probation for another violent offense. *Id.* at 892. The probation officer said that her "honest opinion" was that such a person would not be a good candidate, and in closing argument the State placed considerable emphasis on her testimony, even referring to her as a "so-called expert of dealing with people like" the defendant, and arguing that her testimony showed the defendant should not be placed on probation. *Id.* The court of appeals held that "not making an objection when the probation officer testified that Mares was not a good candidate for probation fell below an objective standard of reasonableness." *Id.* at 893.

In *Mares*, the probation officer testified as to her opinion regarding whether Mares was a good candidate for probation. The prosecutor then placed particular emphasis on this opinion

16

in arguing to the jury that Mares should not be placed on probation. There was no predicate laid for this type of opinion testimony, nor was the probation officer shown to be qualified to give such testimony. The probation officer's opinion on this point was not admissible, and the prosecutor's particular reliance on it in arguing against probation for Mares may well have affected the punishment phase outcome in that case.

This case differs from *Mares* in several key respects. The probation officer here did not testify as to her opinion of whether Smith would be a good candidate for probation. The testimony of which Smith complains consists of two different types. Initially, the officer was asked and responded regarding the nature of the probation department's policy with respect to the risk category in which they place persons convicted of sexually abusing children:

> Q.   It's true, isn't it, that the probation department evaluates risk level of different offenders and different types of offenses?
>
> A.   Correct.
>
> Q.   And is it true that the probation department considers people who sexually abuse children to be at the highest possible risk level?
>
> A.   Right.

This testimony is a description of probation department policy. It is not opinion testimony and is admissible. The prosecutor went on, however, to elicit the following testimony:

> Q.   And is that because a person who sexually abuses a child, even if they go to sex offender therapy, cannot be cured?
>
> A.   Right.

17

Q.    They are always going to be at risk for molesting another child?

A.    Correct.

Q.    And the best that a sex offender therapist can hope to accomplish, even with somebody who is successful in sex offender treatment, is to help a person control their impulses to go molest another child?

A.    Right.

Q.    But they will have that desire in them forever?

A.    Correct.

Q.    It's like being heterosexual or homosexual, that's just the way the person is?

A.    Right.

While this is not an opinion by the probation officer on the jury issue of whether Smith is a good candidate for probation—as in *Mares*—it is (as elicited) opinion testimony regarding the psychological nature of being a child sexual abuser that requires a proper predicate and showing that the witness is qualified to render the opinion. The State did not make such a showing, and Smith's counsel did not object to the testimony. Thus, there is no record here demonstrating that this testimony was admissible. However, unlike in *Mares*, the prosecutor made only a passing reference to this testimony in argument on the question of whether Smith should be given probation.

In addition, in *Mares*, it was significant to the harm analysis that Mares's sole objective in the punishment phase of his trial was to obtain a probated sentence in a case involving the sexual assault of an adult that turned on the credibility of the victim and defendant regarding whether the sex act was consensual. The objectionable opinion testimony in *Mares*, therefore, related directly to the primary point in contention in the punishment phase, and based on the

18

evidence, probation could have reasonably been considered within the realm of possibility. That is not the case here. There was substantial evidence in this case that Smith had regularly sexually abused his stepdaughter over a period of approximately four years, beginning when the child was five years old. The jury assessed punishment on three counts at forty years, fifteen years, and seven years. The nature of the crime and the assessment of punishment plainly indicate that probation was not something the jury was inclined to grant. Thus, whether or not defense counsel's failure to object to the probation officer's opinion testimony regarding whether child sexual abusers can be "cured" and will respond to sex offender treatment as a part of probation fell below an objective standard of reasonable professional conduct, there is no reasonable probability that, but for this failure to object, the outcome of Smith's punishment phase of trial would have been different. *See Strickland*, 466 U.S. at 694.

Smith also contends that he was denied effective assistance when his counsel failed to object to the prosecutor's comment on Smith's right not to testify against himself at the punishment phase of trial.

Smith complains of the following testimony:

> But as you heard him testify the other day, he certainly doesn't want sex offender treatment and he certainly doesn't think he needs sex offender treatment.

> Based on what you hear from him when he testified on guilt/innocence, he has not learned his lesson. He doesn't believe that he has done anything wrong, and he is—I think the evidence —it's a reasonable deduction from the evidence that he is never going to admit this.

19

In support of his position, Smith quotes *Owen v. State*: "If the remark complained of called the jury's attention to the absence of evidence that only the testimony from the Appellant could supply, the conviction must be reversed." 656 S.W.2d 458, 459 (Tex. Crim. App. 1983). The State had argued in *Owen* that its remarks during the punishment phase of trial as to appellant's failure to express remorse or sorrow could not be in error when appellant had not even testified during that phase. *Id.* at 459. Addressing the State's argument, the court cautioned that:

> [a]cceptance of the State's argument would place an accused in the paradoxical position of saying I am sorry for a crime of which I am not guilty. The end result would be to deny the accused the right to enter a plea of not guilty and make application for a probated sentence. . . . The complained of arguments were direct references to what the jury had not heard the Appellant say. In fact, Appellant had said nothing at the punishment stage of trial, the only time when it would have been logical and relevant for him to express remorse or sorrow.

*Id.* at 459-60.

Despite Smith's attempt to liken his situation to that before the court in *Owen*, the argument Smith complains of refers to Smith's testimony at the guilt/innocence phase of trial, not to Smith's failure to testify at the punishment phase. The first was a comment as to how the jury heard Smith "testify the other day," and the second was a comment based on what the jury had heard from Smith "when he testified on guilt/innocence." The prosecutor asked the jury to make "a reasonable deduction from the evidence" at guilt/innocence, not to infer anything about the fact that Smith did not testify at the punishment phase.

Summarizing the evidence is permissible jury argument under *Allridge*. 762 S.W.2d at 155. Even if the prosecutor's argument could be considered an indirect reference to Smith's

failure to testify at the punishment phase, such indirect reference does not amount to an impermissible comment on Smith's right not to testify. *Cruz*, 225 S.W.3d at 549 ("any objectionable argument should be evaluated on a case-by-case basis for what it would 'necessarily and naturally' mean to a jury when taken in the full context of its utterance"); *Caldwell v. State*, 818 S.W.2d 790, 800 (Tex. Crim. App. 1991), *cert. denied*, 503 U.S. 990 (1992), *overruled on other grounds*, *Castillo v. State*, 913 S.W.2d 529, 534 (Tex. Crim. App. 1995) ("It is not sufficient that the language used might be construed as an implied or indirect allusion" to the accused's failure to testify).

A review of the jury argument at both phases of trial reveals nothing that—even if objected to—would be grounds for reversal, and therefore, none of the disputed statements can be the basis for a claim of ineffective assistance of counsel. *See Strickland*, 466 U.S. at 687; *Thompson*, 9 S.W.3d at 812.

We find no basis for Smith's claim of ineffective assistance of counsel. Accordingly, we overrule Smith's points of error. The judgment of conviction is affirmed.

_____

G. Alan Waldrop, Justice

Before Justices Patterson, Waldrop and Henson

Affirmed

Filed: July 14, 2009

Do Not Publish

21