In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-01-217 CR


____________________



JAMES WILLIAMS, Appellant



V.



THE STATE OF TEXAS, Appellee






On Appeal from the 159th District Court


Angelina County, Texas


Trial Court No. 21457






O P I N I O N
 In a non-jury trial, appellant James Williams was convicted of the second degree
offense of felony theft of a truck and trailer and was sentenced to fifteen years in the Texas
Department of Criminal Justice -- Institutional Division. See Tex. Pen. Code Ann. §
31.03(a), (b), (e)(6) (Vernon Supp. 2002). Williams brings two issues on appeal: 1)
sufficiency of the evidence and 2) effectiveness of counsel. 


Background Facts


 Rocky Haney, the general manager of Haney Trucking Company (the owner of the
truck and trailer) testified his company employed Williams as a driver. Assigned truck
number 114, Williams was dispatched to Tyler, Texas, to pick up a pre-loaded trailer on
January 27, 2000, that he was to deliver to San Jose, California, on January 30 or 31. 

 Haney testified that truck 114 was discovered in Dallas, not California, and that an
excessive amount of fuel had been purchased, using a fuel card, in the Dallas area. In an
effort to locate Williams and the truck and trailer, Haney called Williams' home, his
mother, and also his wife who was living in Indiana. According to Haney, Williams' wife
indicated Williams was in the Dallas area and she had heard from him. She also indicated
she would try to get Williams to call Haney. Although Haney continued to call Williams'
wife, Haney indicated Williams never contacted him, returned any of Haney's calls, or
answered the pager. Haney reported the truck and trailer stolen. At trial, Haney testified
the truck's fair market value was between $85,000 and $95,000, and the trailer's value was
$20,000. 

 The fuel reports on truck number 114 showed $900 worth of fuel was purchased on
January 29, January 30, and January 31 in the Dallas area. According to Haney, with the
amount of fuel that was purchased, the truck would have been able to go to California and
back, but it never left the Dallas area. In describing a fuel scam in the trucking business,
Haney explained how a trucker would offer to sell fuel to another driver, buy 100 gallons
of fuel on the fuel card, and receive $50 in cash from the other trucker. 

 The record reveals that one of Haney's other drivers found the loaded trailer in
Dallas. On February 5, 2000, the police found the truck at a different Dallas location. 
The truck had been stripped of the headache rack containing all the chains and binders; the
tires and aluminum wheels had been replaced with "junk tires and steel rims," and the
stereo was missing. Haney indicated the value of the missing equipment, the wrecker bill,
and the shop bill totaled $8,800. Haney also testified that Williams did not have Haney's
consent to take the truck to Dallas and drive it around there for several days and did not
have permission to remove and sell any of the truck's equipment. 

 Williams testified at trial and agreed that Haney's testimony was substantially true
and correct. He acknowledged he took the truck without Haney's consent from Tyler to
Dallas even though he understood he was to take the load from Tyler to San Jose. He
admitted he sold the chains and headache rack to some man in Dallas, but denied
exchanging the tires. Williams also admitted buying fuel three times in Dallas and
indicated two of the purchases were not legitimate. He said he used the money to buy
drugs. 



Sufficiency of the Evidence


 We first consider Williams' challenge to the legal and factual sufficiency of the
evidence. In a legal sufficiency review, this court looks at all of the evidence in the light
most favorable to the verdict to determine whether any rational trier of fact could have
found the essential elements of the offense beyond a reasonable doubt. See Jackson v.
Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). In a factual
sufficiency review, we view all the evidence without the prism of "in the light most
favorable to the prosecution" and set aside the verdict only if it is so contrary to the
overwhelming weight of the evidence as to be clearly wrong and unjust. See Santellan v.
State, 939 S.W.2d 155, 164 (Tex. Crim. App. 1997).

 The elements of theft are as follows: a person, with the intent to deprive the owner
of property, unlawfully appropriates that property, without the effective consent of the
owner. See Thomason v. State, 892 S.W.2d 8, 10 (Tex. Crim. App. 1994); see also Tex.
Pen. Code Ann. § 31.03 (Vernon Supp. 2002). Under the Penal Code, deprivation can
occur by any of the following: (a) withholding property from the owner permanently or
for so extended a period of time that a major portion of the value or enjoyment of the
property is lost to the owner; (b) restoring property only upon payment of reward or other
compensation; or (c) disposing of property in a manner that makes recovery of the
property by the owner unlikely. See Tex. Pen. Code Ann. § 31.01(2) (Vernon Supp.
2002). "Appropriate" means "(A) to bring about a transfer or purported transfer of title
to or other nonpossessory interest in property, whether to the actor or another; or (B) to
acquire or otherwise exercise control over property other than real property." Tex. Pen.
Code Ann. § 31.01(4) (Vernon Supp. 2002). The Code further provides that
"[a]ppropriation of property is unlawful if . . . it is without the owner's consent[.] . . ." 
Tex. Pen. Code Ann. § 31.03(b)(1) (Vernon Supp. 2002). Williams challenges the
elements of appropriation and "intent to deprive" on the grounds that he left the truck at
a secured lot. He claims that since he did not appropriate (or intend to appropriate) the
truck and trailer, the value of the rig should not be considered. 

 The evidence reveals Williams appropriated the truck and trailer by exercising
control over the rig without Haney's consent. The evidence also shows that Williams
intended to deprive Haney of the truck and trailer. Intent to deprive is determined from
the words and acts of the accused, and the intent must exist at the time of the taking. 
Flores v. State, 888 S.W.2d 187, 191 (Tex. App.--Houston [1st Dist.] 1994, pet. ref'd). 
Proof of a mental state almost always depends upon circumstantial evidence, as it does
here. State v. Hart, 905 S.W.2d 690, 693 (Tex. App.--Houston [14th Dist.] 1995, pet.
ref'd). Without authorization, Williams drove the truck from Tyler to Dallas, left it there,
never informed anyone of its location, and never contacted his employer. When the police
located the truck, it had been stripped. Williams testified he was not guilty of taking the
truck, apparently because he left it, by his description, in a "secure place" with armed
guards. Yet he also testified the location was in a "notorious truck stop for trucks being
stolen out of there and stuff being stolen out of there, prostitution, drugs, murders." 

 We find the evidence is legally and factually sufficient to support the theft
conviction. In viewing all the evidence in a light favorable to the verdict, the trier of fact
could have found all the elements of the offense beyond a reasonable doubt. In viewing
the evidence without the "in a light favorable to the prosecution" prism, we find the
verdict is not so contrary to the overwhelming evidence as to be clearly wrong and unjust. 
Issue two is overruled. 

Ineffective Assistance of Counsel
 

 In issue one, appellant argues his trial counsel provided ineffective assistance. We
set out his claims:

 1. With the exception of a motion for continuance, trial counsel filed
no pre-trial motions and had no subpoenas issued. 

 2. At the "Status Hearing," counsel announced he was not ready for
trial, because he was waiting on records relating to a pardon allegedly given
Williams for prior offenses. Trial counsel first told the judge that he
(counsel) had written a letter seeking information on the pardon, but later in
the hearing, when questioned by the trial judge, he admitted he had not
written a letter at all. Allegedly, the only thing counsel had done on the case
between March 6 and March 28 was to make one phone call. At the
conclusion of the hearing, the trial judge instructed the State and defendant
to have their witnesses testify on the trial date. 

 3. On the date set for trial, trial counsel again announced "not ready." 
Counsel had no motion for continuance to present to the judge. Appellant
himself attempted to explain the grounds for the "not ready" announcement. 
Defense counsel invoked the "Rule." However, when the trial judge asked
counsel if a person remaining in the courtroom was one of his witnesses,
counsel responded that the person was only a character witness. After the
State rested its case on guilt/innocence, defense counsel then asked if this
was the punishment phase. The trial judge reminded him that the phase of
the trial was still guilt/innocence. 

 4. At trial, counsel called two witnesses, Williams and his father.
One of the first questions trial counsel asked Williams was whether the
testimony of the State's two witnesses was "substantially true and correct." 
 5. After the trial court found Williams guilty, appellant's attorney
allegedly tried to talk the trial court out of setting a reasonable bond. 

 6. Trial counsel did not allow Williams to read the Presentence
Investigation Report prior to sentencing. 

 

Williams argues that, given the totality of the representation rather than isolated acts or
omissions, the representation fell below the standards set by Strickland v.Washington, 466
U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). He maintains the errors are firmly
founded in the record and are so serious that he was deprived of the counsel guaranteed
by the Sixth Amendment. 

 To establish his claim, appellant must first show that his counsel's performance was
deficient. Mitchell v. State, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002) (citing
Strickland, 466 U.S. at 687). Appellant meets this requirement if he proves by a
preponderance of the evidence that counsel's representation objectively fell below the
standard of professional norms. Mitchell, 65 S.W.3d at 642. Second, appellant must
show that the deficient performance prejudiced his defense. Id. To make this showing,
appellant must show a reasonable probability that, but for his counsel's unprofessional
errors, the result of the proceeding would have been different. Id. "A reasonable
probability is a probability sufficient to undermine confidence in the outcome." Id. 
Applying the Strickland test, we consider each of the asserted deficiencies. 
 Pre-Trial Matters


 The failure to file pre-trial motions does not per se amount to ineffective assistance
of counsel. See Ryan v. State, 937 S.W.2d 93, 104 (Tex. App.--Beaumont 1996, pet.
ref'd) (citing Wills v. State, 867 S.W.2d 852, 857 (Tex. App.--Houston [14th Dist.] 1993,
pet. ref'd)). Appellant does not identify a basis in the record for these motions nor does
he explain in what way the motions would have been beneficial or how results would have
been different had the motions been filed. Moreover, as to a motion for discovery, the
record reveals the district attorney's office had an "open file" policy, and trial counsel had
reviewed the file two or three times. Trial counsel testified at the motion for new trial
hearing that Williams never gave him a list of witnesses to interview and did not offer a
theory of defense. Although no motion in limine was filed to attempt to keep out the
extraneous offenses, Williams does not show that the extraneous offenses were
inadmissible.

 The record reveals that Williams' counsel interviewed Haney, the defendant, and
defendant's father prior to trial. Counsel attempted to persuade Haney to settle for
restitution. In addition, counsel called the Board of Pardons and Paroles, researched case
law, and reviewed the District Attorney's file two or three times. Trial counsel also
secured a plea offer from the State, but it was later withdrawn when Williams jumped
bond. After Williams was extradited back to Texas, trial counsel visited with him in jail. 
The State made another plea offer, but Williams rejected it. Appellant fails to show how
any of this pre-trial conduct of counsel meets the second prong of Strickland.

Status Hearing


 Trial counsel represented to the trial judge that he (counsel) had written a letter to
the Board of Pardons and Paroles, and then he admitted a few moments later that he had
not done so. Should counsel have intended the initial misrepresentation, his conduct was
unacceptable. Although Williams does not say so directly, he seems to argue that trial
counsel's conduct resulted in a loss of credibility with the trial judge. Counsel promptly
corrected his statement. There is no indication the trial judge lost confidence in trial
counsel, since the judge granted counsel the relief (a continuance) requested at the "status
hearing." There is no indication that the conduct altered or prejudiced the outcome of the
proceeding. As to the representation pertaining to the letter, the second prong of
Strickland has not been met. 



Trial on the merits and Sentencing


 The fact that at the trial on the merits trial counsel announced "not ready" does not
show, by itself, that his representation fell below the standard of professional norms. 
Counsel indicated he had not seen the pen packets until that morning. Williams does not
explain how trial counsel's apparent belief that a character witness does not have to abide
by the "Rule" affected the outcome of the trial. The same conclusion applies both to trial
counsel's query to the judge -- asking whether this was punishment phase after the State
rested its guilt/innocence portion of the case -- and to counsel's later misstatement "State
rests -- I mean, the defense rests[.]" 

 Finally, Williams asserts that his trial counsel "appear[ed] to try to talk the Judge
OUT of setting a reasonable Appeal Bond[.]" We do not find the appellant's
characterization of the exchange fairly reflects the record. 

Hearing on Motion for New Trial


 Appellant directs us to various instances of alleged ineffectiveness that he claims
were revealed during the hearing on the motion for new trial. Appellant faults trial counsel
for failing to correctly remember (a) what counsel's announcement was on March 6 and
(b) whether he allowed Williams to read the PSI report prior to sentencing. Appellant does
not explain how these lapses would have made the outcome of the trial different. Williams
also points out that in an earlier motion trial counsel requested a continuance because
"Billy Weems" and J. W. Williams, witnesses needed for his case, were out of state. At
the motion for new trial hearing, trial counsel acknowledged "Weems" was actually
appellant's brother; counsel also indicated that appellant's father, J. W. Williams, may not
have been out of state at the time counsel requested the continuance. Whatever confusion
there may have been regarding the witnesses, appellant did not by testimony at the hearing
on the motion for new trial or by affidavit explain what their testimony might have been
or how it would have affected the outcome of the trial. To show that counsel was
ineffective for failure to call witnesses, the evidence must show the witnesses were
available and the defendant would have benefitted from their testimony. Mares v. State,
52 S.W.3d 886, 892 (Tex. App.--San Antonio 2001, pet. ref'd). 

 Appellant further points out that at the motion for new trial hearing, trial counsel
did not acknowledge he had lied to the judge about the letter to the Board of Pardons and
Paroles; counsel stated "I wasn't sure whether I had really ever dictated a letter or not. 
I really wasn't sure." Counsel also did not recall making a statement to Williams' father
to the effect that he (trial counsel) would be able to get the case thrown out of court
because of his friendship with the trial judge. Appellant's father testified that such a
statement had been made. The testimony was conflicting, and the trial judge was free to
believe whom he wished. See McCartney v. State, 542 S.W.2d 156, 162 (Tex. Crim.
App. 1976).

Conclusion


 Even if trial counsel's representation fell below the standard of professional norms,
Williams has not met the burden under the second requirement of Strickland. The second
prong requires a showing that but for the ineffective assistance the outcome of the trial
would have been different. Strickland, 466 U.S. at 694. Appellant has not made such a
showing. At the motion for new trial hearing, trial counsel's memory was that Williams
insisted on testifying at trial. Appellant does not contend otherwise. During the
guilt/innocence phase of the trial, Williams acknowledged taking the truck and trailer to
Dallas without Haney's consent, selling the headache rack, chains, and binders from the
truck to someone else, selling fuel to get money for drugs, and leaving the rig in Dallas
without ever contacting Haney or informing him of the rig's location. In light of his own
admissions, it cannot be said that any deficiency in performance prejudiced his defense or
that the outcome would have been different. Issue one is overruled. 

 The judgment of conviction is affirmed.

 AFFIRMED. 

 _________________________________

 DAVID B. GAULTNEY

 Justice


Submitted on June 18, 2002

Opinion Delivered August 14, 2002

Do Not Publish


Before Walker, C.J., Burgess and Gaultney, JJ.