In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-18-00047-CR**
**NO. 09-18-00048-CR**
_____

**JEREMY ANTAWIN JACKSON, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 411th District Court**
**Polk County, Texas**
**Trial Cause Nos. 22211 & 25636**

**MEMORANDUM OPINION**

In appellate cause number 09-18-00047-CR, Appellant Jeremy Antawin Jackson appeals the trial court's order revoking his community supervision in trial cause number 22211. In appellate cause number 09-18-00048-CR, Jackson appeals his conviction for aggravated sexual assault of a child in trial cause number 25636. We affirm.

## Background

In January 2012, Jackson was indicted for evading arrest or detention, enhanced to a felony as a result of a prior state jail felony conviction. In July 2012, a jury found Jackson guilty of evading arrest or detention. The trial court sentenced Jackson to ten years of confinement but suspended the sentence and placed Jackson on community supervision for ten years.

On August 7, 2017, the State filed its Second Amended Motion to Revoke Probation and alleged that Jackson violated a condition of his community supervision

> which required that he "Neither commit nor be convicted of any offense against the laws of the State of Texas, any other State or of the United States;" in that Defendant violated this condition by committing the offense of Felon in Possession of a Firearm on or about July 12, 2015, in Harris County, Texas and Assault Causes Bodily Injury on or about December 25, 2015, in Polk County, Texas; [and] Sexual Assault Of A Child on or about June 22, 2017, in Polk County, Texas.

Jackson pleaded "not true" to the allegations, and it was agreed that the motion to revoke would be carried along with the jury trial in the aggravated sexual assault of a child case in trial cause number 25636. The indictment in cause number 25636 alleged that Jackson "on or about May 29th, 2015, . . . intentionally or knowingly

2

cause[d] the penetration of the mouth of Chloe Doe,[1] a pseudonym, a child younger than 14 years of age with the sexual organ of said Defendant[.]"

The jury found Jackson guilty of aggravated sexual assault of a child in trial cause number 25636. On the same day, the trial court proceeded to punishment and held a hearing on the motion to revoke in trial cause number 22211.

In his hearing on the motion to revoke, Jackson pleaded "true" to a prior felony conviction alleged in the indictment, the State reintroduced the evidence from the guilt-innocence portion of trial cause number 25636, and the State introduced judgments for six prior felony convictions. All the evidence was admitted. The trial court found Jackson violated the condition of his community supervision that required that he should not commit or be convicted of any offense against the laws of the State of Texas, any other State, or of the United States. Jackson was sentenced to life in prison in trial cause number 25636 and ten years of confinement in trial cause number 22211, with the sentences to run concurrently.

---

[1] We use pseudonyms to refer to the alleged victim and family members. *See* Tex. Const. art. I, § 30 (granting crime victims "the right to be treated with fairness and with respect for the victim's dignity and privacy throughout the criminal justice process."). Because the indictment in trial cause number 25636 uses the pseudonym "Chloe Doe" for the victim, we will use the same pseudonym when referring to the victim.

Jackson filed a notice of appeal in both cases. On March 2, 2018, Jackson filed a motion for new trial in trial cause number 25636, but he did not file a motion for new trial in trial cause number 22211. The trial court held a hearing on the motion for new trial and denied the motion.

<u>Appeal of Conviction for Aggravated Sexual Assault of a Child</u>

In appellate cause number 09-18-00048-CR, Jackson raises three issues in his appeal of his conviction for aggravated sexual assault of a child in trial cause number 25636. He challenges his trial counsel's effectiveness, the legal sufficiency of the evidence supporting his conviction, and the denial of his motion for new trial.

<u>Evidence Presented at Aggravated Sexual Assault Trial</u>

Dallas Early, a patrol officer with the Livingston Police Department, testified that on June 22, 2017, Jackson made a call to the dispatcher and Officer Early was dispatched to an apartment complex in Polk County. While en route, Officer Early learned that there was also a woman in the lobby of the police department who wanted to speak to him. Upon his arrival, he spoke with Jackson outside of an apartment and learned that Jackson wanted to talk to him about Jackson's girlfriend "taking their kids." Around the same time, dispatch informed Officer Early that Jackson's girlfriend was at the police station wanting to talk to an officer. Officer Early testified that the couple lived in the apartment, had previously been involved

4

in an altercation, and a window was broken. According to Officer Early, Jackson told him that Jackson's girlfriend "would probably try to blame the broken window and the argument on him. He said he never put his hands on her and also he said that she was probably going to try to accuse him of molesting her female child."

Officer Early testified he went back to the police department to speak with Jackson's girlfriend, Christy, who was Chloe's mother. According to Officer Early, Christy told him about the argument, admitted she broke the window, stated she was worried about protecting her daughter, and provided a voluntary written statement. Officer Early testified that after Christy completed her statement, Officer Early read the statement, had Christy sign the statement, he signed the statement as a witness, and he "turn[ed] the report over for the outcry[]" and for a detective to investigate further.

Kirsti Reese, a clinical therapist with Childrenz Haven, a local child advocacy center, testified that she "originally met [Chloe] for an intake" in August 2017, and she has had thirteen therapy sessions with Chloe. According to Reese, Chloe's grandmother brought her to all the sessions, and Chloe was six years old at the time of trial. Reese testified that Chloe has made progress accepting what happened but that it has been difficult for Chloe because Jackson was her "father figure," and that adds trauma to a child who has been the victim of sexual abuse. According to Reese,

5

it is the norm for a child to have a delayed outcry when the child is traumatized, and that "usually the closer the person who has hurt [the child] is usually the more traumatized the child will be." Reese testified that during the sessions Chloe has always been consistent about the trauma she suffered and that during the January 2, 2018 session, Chloe drew a picture to show what happened.

Six-year-old Chloe agreed at trial that she used to live with her mother and a person named Jeremy, whom she identified at trial as the defendant. She testified that once her mother left her with Jeremy when her mother went to the store and something happened to Chloe that Chloe did not like. According to Chloe, she and Jeremy were in the bathroom in the apartment, Jeremy told her, "Suck my dick[,]" he "let [her] suck his middle part[]" and she testified that then "[p]ee" came out of it and she "threw up in the trash . . . [b]ecause it was nasty." At trial, Chloe was shown a drawing of the male body and was asked to put a circle around what she refers to as "the middle part[.]" The drawing was admitted into evidence and it shows that Chloe identified the penis as what she calls "the middle part[.]" Chloe testified that when her mother came home from the store Chloe did not tell her mother what had happened, but that day she did tell her mother in Jeremy's presence "he put it in my mouth[.]" According to Chloe, Jeremy "was laying on the floor crying[]" when Chloe told her mother, but he never told her mother what he put in Chloe's mouth.

6

Chloe testified she went to stay with a lady named "Pat" a long time after the incident and she talked to "Pat" about the incident. Chloe testified that a couple of weeks before the trial she drew a picture for her therapist at Childrenz Haven that showed her sucking Jeremy's middle part and that showed her running over and throwing up in the trash can after he "peed in [her] mouth." A copy of the drawing was admitted into evidence. She testified the picture showed that on a different day from when she sucked his "middle part[,]" she told her mother what happened and Jeremy was on the floor crying. According to Chloe, the incident happened when she was five years old and she did not believe it happened before she was five. She testified that one day when she and her mother went to "Ms. Pat's" and then to Chloe's grandmother's house, she told her mother that the incident did not happen but that it was a lie and she later told her mother that it was the truth. She testified that the truth was that the incident really happened.

Christy testified that she and Jackson lived together in Livingston for about six months when Chloe was two years old, and that Chloe lived with them. According to Christy, once when Chloe was about two years old, Christy left Chloe with Jackson while she went to the store. Christy testified that when she got back from the store, Chloe ran up to her and said, "Momma he put it in my mouth." Christy testified that she asked Chloe what she was talking about and Chloe would

never say what he put in her mouth. According to Christy, Jackson was in the bathroom and she asked him what Chloe was talking about and "[h]e said that it was the food that he made her eat[,]" and he did not lie on the floor crying. Christy testified that they had trouble getting Chloe to eat food because all she wanted was sweets and candy so they often had to "stuff her mouth" with "actual food[.]" Christy testified she did not make a police report because she asked Chloe what he put in her mouth and she said food.

Christy testified that around June 22, 2017, she made a police report about the incident after she and Jackson had an argument, she broke a window, and she went to the police station. According to Christy, she made the police report after Patricia, a friend of the family with whom Chloe was staying told Christy information about what Chloe said had happened with Jackson. Christy testified that Chloe later told her once prior to the time she heard from Patricia and also "a couple of Sundays ago at church[]" that this might have been a bad dream. Christy agreed that since the time CPS became involved, Chloe's life has been "fairly traumatic," that Chloe wanted to be reunited with Christy, and that Chloe would say things to make Christy happy.

During the punishment phase of the trial, the State reintroduced the evidence from the guilt-innocence portion of the trial and judgments for Jackson's six prior felony convictions, which were admitted into evidence. No other witnesses testified.

<u>Alleged Ineffective-Assistance-of-Counsel and</u>
<u>Denial of Motion for New Trial</u>

In his first issue, Jackson argues his counsel was ineffective, and in his third issue he complains that the trial court erred in denying his motion for new trial wherein he also complained about his trial attorney. Because these issues share some related arguments, we address them together. Jackson contends his trial attorney was ineffective by:

> (1) not providing a plea bargain to consider, (2) not working with Jackson on his defense or interviewing potential witnesses before trial, (3) preventing Jackson from testifying, (4) not calling any witnesses in either phase of the trial, (5) not conducting an adequate cross-examination, (6) allowing the State to bolster the witness credibility without objection, (7) not filing any pretrial motions in an Aggravated Sexual Assault case, (8) not requesting a Presentence Investigation and ([9]) not presenting any evidence because of his unreasonable fear that Jackson's background would be brought up.

In his motion for new trial, Jackson asserted (1) that his trial counsel was ineffective because he failed to prepare Jackson for trial in that he did not spend enough time with Jackson prior to trial and did not discuss or develop a defense or obtain witnesses for either the guilt/innocence or the punishment phase of the trial; (2) that his trial counsel was ineffective because he failed to present any plea bargain offer

9

to Jackson; and (3) there was insufficient evidence to support the jury's verdict. Two affidavits were attached to the motion for new trial. One of the affidavits was of Jackson's new attorney who filed the motion for new trial. The new attorney stated that Jackson told him that Jackson's trial attorney only met with Jackson twice before trial and that the trial attorney did not review the case with Jackson, did not communicate any plea offers to Jackson, never asked Jackson's side of the story, refused to subpoena witnesses on Jackson's behalf, did not let Jackson testify, and did not use evidence at trial that was provided by Jackson's family that would have helped Jackson's defense. The other affidavit was from Jackson's sister who stated that she was willing and able to testify in the punishment phase as to Jackson's good qualities but that she was not called to testify and that she believes Jackson's trial counsel had evidence that would help Jackson's defense but did not use it. Jackson's sister did not identify what evidence the trial counsel may have had but did not use. On appeal, Jackson argues the trial court abused its discretion in denying the motion for new trial as to the ineffective assistance of counsel claims.[2]

---

[2] We note that although we do not read Jackson's third appellate issue to challenge the trial court's denial of the motion for new trial on sufficiency grounds asserted in Jackson's motion, we have reviewed the sufficiency of the evidence supporting his conviction and discuss that review in the section of our opinion that discusses Jackson's second appellate issue.

A defendant has a Sixth Amendment right to the effective assistance of counsel at trial. U.S. Const. amend. VI; *see Strickland v. Washington*, 466 U.S. 668, 684-85 (1984). To establish that he received ineffective assistance of counsel, Jackson must demonstrate that (1) counsel's performance fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *See Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001) (citing *Strickland*, 466 U.S. at 687). The party alleging ineffective assistance has the burden to develop facts and details necessary to support the claim. *See Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). A party asserting an ineffective-assistance claim must overcome the "strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." *See Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999) (citing *Strickland*, 466 U.S. at 689). An appellant's failure to make either of the required showings of deficient performance or prejudice defeats the claim of ineffective assistance. *Rylander v. State*, 101 S.W.3d 107, 110 (Tex. Crim. App. 2003); *see also Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009) ("An appellant's failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other prong.").

The right to effective assistance of counsel ensures the right to "reasonably effective assistance[,]" and it does not require that counsel must be perfect or that the representation must be errorless. *See Ingham v. State*, 679 S.W.2d 503, 509 (Tex. Crim. App. 1984). The appropriate context is the totality of the representation; counsel should not be judged on isolated portions of the representation. *See Thompson*, 9 S.W.3d at 813; *Solis v. State*, 792 S.W.2d 95, 98 (Tex. Crim. App. 1990).

We review a trial court's ruling on a motion for new trial for an abuse of discretion, "reversing only if the trial judge's opinion was clearly erroneous and arbitrary." *Riley v. State*, 378 S.W.3d 453, 457 (Tex. Crim. App. 2012). We view the evidence in the light most favorable to the trial court's ruling, must not substitute our judgment for that of the trial court, and must uphold the ruling if it is within the zone of reasonable disagreement. *Id.*; *Wead v. State*, 129 S.W.3d 126, 129 (Tex. Crim. App. 2004). A trial court abuses its discretion in denying a motion for new trial if no reasonable view of the record could support its ruling. *Riley*, 378 S.W.3d at 457; *Webb v. State*, 232 S.W.3d 109, 112 (Tex. Crim. App. 2007).

As to Jackson's claim that his trial counsel was ineffective because he failed to provide him with a plea bargain to consider, his trial counsel testified at the hearing on the motion for new trial that the State's file notes a plea recommendation

12

of "40 years TDC" initialed and dated by the prosecutor, and that if the prosecutor had made that recommendation in November of 2017 as reflected, then trial counsel relayed that recommendation to Jackson. According to Jackson's trial counsel, he communicated the plea bargain "early on" and would have told him about it "shortly after it was made[,]" but that Jackson would not take that recommendation and that Jackson "made it very plain that he was not going to plead guilty to this offense no matter what the recommendation was." Jackson, however, testified that no plea bargain was ever presented to him. On this record, we cannot say that Jackson has shown trial counsel's performance was deficient on this basis. *See Strickland*, 466 U.S. at 687.

As to Jackson's claim that trial counsel did not prepare him for trial, work with him on his defense, or interview potential witnesses before trial, trial counsel testified that he put his "heart and s[oul] into [Jackson's] defense[,]" that he visited with Jackson three to four times regarding the criminal case and three to four times in the CPS case, and that some of the meetings were productive meetings regarding trial strategy in the criminal case. According to trial counsel's testimony, they developed a strategy based on "incongruents of the timeline[]" in that the incident happened in 2015, it was not indicted until 2017 and there were at least a couple of years between when the incident happened and when the mother reported it to the

13

police, the incident was not reported until after the mother and Jackson had an argument and Jackson called the police, and that the mother did not believe the victim. Trial counsel testified that the trial court ruled that whether Christy believed Chloe was irrelevant. Trial counsel testified that when he would visit Jackson, trial counsel would explain the contents of the State's file and read Jackson documents. We cannot conclude on this record that the trial court abused its discretion because the trial court could have concluded that trial counsel adequately prepared Jackson for trial and that trial counsel had a reasonable trial strategy for not calling witnesses during the guilt-innocence phase, and therefore, Jackson has not demonstrated that these actions or inactions constituted a deficient performance. *See id*. Also, although Jackson asserts he had copies of text messages showing Christy did not believe Chloe that were helpful to his defense and that he had witnesses that could have discredited Christy or testified as to how he interacted with Chloe, Jackson has not shown that the result of the proceeding would have been different even if the text messages or testimony had been admitted. *See id*.

Next, we consider Jackson's claim that trial counsel was ineffective by preventing Jackson from testifying. Jackson testified that he told trial counsel that he wanted to testify, that "when it was my turn, I wanted to speak[,]" that he wanted to testify after his trial counsel advised him not to, and that his trial counsel prevented

14

him from testifying. However, Jackson's trial counsel testified at the hearing on the motion for new trial as follows:

> [State's counsel]: Now, after the State rested their case, did you have an opportunity to talk with the defendant Jeremy Jackson regarding whether or not he should - - he wanted to testify, or prior to?
>
> [Trial counsel]: We discussed that from Day 1. May I elaborate?
>
> [State's counsel]: Yes, please.
>
> [Trial counsel]: Jeremy has a record. Jeremy has a pretty bad record. We discussed from Day 1 the fact that if he does not testify on guilt or innocence, his record does not come into evidence on the guilt or innocence phase of the trial.
> You will recall that during the guilt or innocence stage of the trial, his record never came up because (A) it's irrelevant, and you know that, and (B) it - - it never came up because . . . he didn't testify to be cross-examined about his record.
> We discussed many, many times during my visits with him before the trial and during the trial, "Okay. Jeremy, here's the way it works. If you testify, she's going to ask you about your record. If you don't testify, your record will never come up to the jury on guilt or innocence stage."
> He agreed not to testify. There didn't seem to be any hesitation on his part in that regard.
>
> [State's counsel]: So did he ever tell you he wanted to testify?
>
> [Trial counsel]: Oh, maybe early on he might have said something about that; but as we got closer to the trial and it began to sink in to him about if he doesn't testify his record doesn't come up - - and during the course of the trial he was pretty adamant that he did not want to testify.
> And we thought the trial went pretty well from our strategy, from our trial strategy. The jury was out for five-and-a-half hours, almost, if you recall.

15

[State's counsel]: So if he testified that during trial he said he wanted to testify, would that be accurate?

[Trial counsel]: That would be false.

On cross-examination, Jackson acknowledged that his trial counsel advised him it would be a bad idea for him to testify and that he took trial counsel's advice. Jackson failed to demonstrate that this amounted to deficient performance or that if he had testified that the result of the proceeding would have been different. *See id.*

Jackson also claims on appeal that his trial counsel was ineffective by not calling any witnesses in either phase of the trial. Failure to call a witness does not amount to ineffective assistance of counsel unless the record shows that the witness was available at the time of the trial and that the testimony of the witness would have benefitted appellant. *See Butler v. State*, 716 S.W.2d 48, 55 (Tex. Crim. App. 1986); *Cate v. State*, 124 S.W.3d 922, 927 (Tex. App.—Amarillo 2004, pet. ref'd); *Parmer v. State*, 38 S.W.3d 661, 668 (Tex. App.—Austin 2000, pet. ref'd). As to not calling witnesses for the guilt-innocence phase, trial counsel testified that he remembered speaking to various family members and he "didn't glean anything from any of the family members that would have benefited us in our trial strategy that was already pretty well established[]" and he did not see "any benefit to calling witnesses who weren't there and didn't see anything." According to Jackson's trial counsel, "[m]y trial strategy was to discredit the mother because of . . . the inconsistencies and

16

incongruities in the timeline." Jackson's trial counsel further testified that he did not call any witnesses during the punishment phase because he gave the family members and friends that were there for the verdict the opportunity to testify at the punishment stage, and "they all declined." We cannot conclude trial counsel had no reasonable trial strategy for failing to call witnesses for either phase of the trial. Furthermore, Jackson has not demonstrated that the result of the proceeding would have been different if witnesses had testified. Jackson has failed to establish the two-pronged standard of *Strickland*. *See Strickland*, 466 U.S. at 687.

Jackson complains that that his counsel was ineffective in conducting an adequate cross-examination because he only cross-examined therapist Kirsti Reese regarding Chloe's date of birth. According to Jackson, his trial counsel "did not question her about the validity of trauma therapy or how it may be associated with other events in [Chloe]'s life like her father being in prison." He also asserts that his trial counsel was ineffective by not objecting to Reese's testimony that Chloe's version of what happened was consistent throughout months of therapy, thereby allowing the State to bolster Chloe's testimony. Although trial counsel was not asked at the hearing on the motion for new trial why he did not object, it is possible that he made a strategic decision not to object to avoid drawing attention to the testimony. *See*, *e.g.*, *Pittman v. State*, 9 S.W.3d 432, 436 (Tex. App.—Houston [14th Dist.]

17

1999, no pet.) (holding that appellant failed to satisfy first *Strickland* prong on silent record when it was possible that counsel did not pursue a ruling on his objection in part because it may have drawn more attention to the matter). Further, even assuming without deciding that both omissions met the first *Strickland* prong, Jackson has not demonstrated that the result of the proceeding would have been different if trial counsel had "adequately" cross-examined Reese or objected to the complained-of testimony. *See Strickland*, 466 U.S. at 687.

Next, Jackson argues that his trial counsel was ineffective in not filing any pretrial motions to determine the reliability of the victim or any motion to determine the outcry person. Generally, the failure to file pretrial motions is not ineffective assistance of counsel because trial counsel may decide not to file pretrial motions as part of his trial strategy. *Mares v. State*, 52 S.W.3d 886, 891 (Tex. App.—San Antonio 2001, pet. ref'd). "[U]nless an appellant shows that a pretrial motion had merit and that a ruling on the pretrial motion would have changed the outcome of the case, he has failed to establish both prongs of the *Strickland* standard." *Jones v. State*, No. 04-12-00773-CR, 2013 Tex. App. LEXIS 11297, at *8 (Tex. App.—San Antonio Sept. 4, 2013, pet. ref'd) (mem. op., not designated for publication) (citation omitted). Here, Jackson has not explained how the pretrial motions he believes

18

should have been filed have merit, nor has he shown how obtaining a ruling on such motions would have changed the outcome of this case. *See id.*

Jackson asserts his trial counsel was ineffective in not requesting a presentence investigation. Where a trial court assesses punishment, its decision to order a PSI report is discretionary. *See* Tex. Code Crim. Proc. Ann. art. 37.07 § 3(d) (West Supp. 2018);[3] *Summers v. State*, 942 S.W.2d 695, 696 (Tex. App.—Houston [14th Dist.] 1997, no pet.); *Stancliff v. State*, 852 S.W.2d 639, 640 (Tex. App.— Houston [14th Dist.] 1993, pet. ref'd). We note that a 2012 Presentence Investigation Report was filed in cause number 22211 that detailed Jackson's numerous convictions including but not limited to convictions for prohibited weapons, multiple burglary convictions, possession of a controlled substance convictions and convictions for engaging in organized criminal activity. The Evaluation Summary in the report noted that Jackson "has a very extensive criminal history that includes multiple offenses along with multiple probation revocations and one parole revocation[,]" that he is "Alcohol and Cannabis dependent[.]" Jackson makes no showing of how the result of the proceeding would have been different with the introduction of the PSI. *See McFarland v. State*, 928 S.W.2d 482, 500 (Tex. Crim.

---

[3] We cite to the current version of the statutes because the amendments do not affect the disposition of this appeal.

19

App. 1996). Similarly, he has not shown how the result of the proceeding would have been different if a jury, and not the trial court, would have assessed punishment considering his number of felony convictions that were admitted during the punishment phase. *See Strickland*, 466 U.S. at 687.

As for his argument that trial counsel was ineffective in not presenting any evidence because of his unreasonable fear that Jackson's background would be brought up, trial counsel testified specifically as to the trial strategy, how Jackson's record could be detrimental to his case, and how he did not see the benefit of introducing evidence through individuals who were not there or who did not witness the incident. Jackson failed to show how the introduction of any such evidence would have changed the outcome of the case. Accordingly, Jackson has not demonstrated either prong of the *Strickland* test as to this allegation of ineffective assistance of trial counsel. *See id.*

Having concluded that Jackson failed to meet at least one prong of the *Strickland* test as to each instance of alleged ineffective assistance by trial counsel, we overrule issue one. *See id.* Furthermore, viewing the evidence in the light most favorable to the trial court's ruling, the trial court did not abuse its discretion in denying Jackson's motion for new trial. *See Riley*, 378 S.W.3d at 457; *Wead*, 129 S.W.3d at 129. We overrule issue three.

20

<u>Sufficiency of the Evidence</u>

In his second issue, Jackson challenges the sufficiency of the evidence supporting the jury's guilty verdict. Specifically, Jackson argues that the testimony of Christy and Chloe was inconsistent on whether the alleged offense occurred when Chloe was two years old or five years old, that if it allegedly occurred when she was two years old, then Chloe would not be able to remember the event, and that the confused child's testimony is not enough to support Jackson's conviction.

A person commits the offense of aggravated sexual assault if he intentionally or knowingly causes the penetration of the mouth of a child younger than fourteen years of age by the sexual organ of the actor. Tex. Penal Code Ann. § 22.021(a)(1)(B)(ii) (West 2019). In reviewing the sufficiency of the evidence to determine whether the State proved the elements of the offense beyond a reasonable doubt, we apply the *Jackson v. Virginia* standard. *Brooks v. State*, 323 S.W.3d 893, 894-95 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Under that standard, a reviewing court must consider all the evidence in the light most favorable to the verdict and in doing so determine whether a rational justification exists for the jury's finding of guilt beyond a reasonable doubt. *Id.* at 902; *see also Jackson*, 443 U.S. at 319. As the trier of fact, the jury is the sole judge of the weight and credibility of the witnesses' testimony and on appeal we must give

deference to the jury's determinations. *Brooks*, 323 S.W.3d at 899, 905-06. If the record contains conflicting inferences, we must presume the jury resolved such facts in favor of the verdict and defer to that resolution. *Id.* at 899 n.13 (citing *Jackson*, 443 U.S. at 319). On appeal, we serve only to ensure the jury reached a rational verdict, and we may not substitute our judgment for that of the fact finder. *King v. State*, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000). In our review, we consider both direct and circumstantial evidence and all reasonable inferences that may be drawn from the evidence. *Gardner v. State*, 306 S.W.3d 274, 285 (Tex. Crim. App. 2009); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

The jury heard Chloe's testimony that on one occasion she and Jackson were in the bathroom in the apartment, Jackson told her, "Suck my dick[,]" he "let [her] suck his middle part[]" by putting it into her mouth, then "[p]ee[]" came out of it and she "threw up in the trash . . .[b]ecause it was nasty." The jury saw the drawing of a male body where Chloe circled the area of the penis as the part of the body she refers to as the "middle part." The jury saw Chloe's drawing from her counseling session where Chloe described what happened. The jury heard Christy's testimony that when she returned home from the store Chloe reported that Jackson "put it in her mouth." The jury heard Chloe's therapist's testimony that Chloe was consistent regarding the incident throughout her therapy sessions.

22

The testimony of a child victim, standing alone and without corroboration, is legally sufficient to support a conviction for aggravated sexual assault of a child. *See* Tex. Code Crim. Proc. Ann. art. 38.07(a), (b)(1) (West Supp. 2018) (a child's testimony alone is sufficient to support a conviction for aggravated assault when the child is under the age of seventeen at the time of the alleged offense); *Tear v. State*, 74 S.W.3d 555, 560 (Tex. App.—Dallas 2002, pet. ref'd).

Viewing the evidence in the light most favorable to the jury's verdict, we conclude that a rational jury could find, beyond a reasonable doubt, that Jackson committed the aggravated sexual assault of a child as alleged in the indictment. We conclude the evidence is sufficient to support the jury's verdict, and we overrule Jackson's second issue.

<u>Appeal of Revocation of Community Supervision</u>

In one issue in appellate cause number 09-18-00047-CR, Jackson appeals the revocation of his community supervision. Jackson argues the trial court abused its discretion in finding that Jackson violated the terms of his community supervision. According to Jackson, the only alleged violation that the State presented evidence on was that Jackson violated his supervision based on the evidence presented in trial cause number 25636 wherein he was convicted of aggravated sexual assault of a child. Jackson asserts the reliance on the jury verdict was error for the same reasons

he argues in his direct appeal of his conviction in trial cause number 25636. We overrule the issues in appellate cause number 09-19-00048-CR, and we also overrule Jackson's issue in appellate cause number 09-19-00047-CR.

We affirm the trial court's judgments.

AFFIRMED.

_____
LEANNE JOHNSON
Justice

Submitted on June 27, 2019
Opinion Delivered October 9, 2019
Do Not Publish

Before Kreger, Horton, and Johnson, JJ.

24